Cincinnati N. O. & T. P. Ry. Co., &c. v. Cook's Admr.

CASE 24—ACTION TO RECOVER DAMAGES FOR THE DEATH OF PLAINTIFF'S.
INTESTATE.—MARCH 22.

# Cincinnati, N. O. & T. P. Ry. Co., &c. v. Cook's Admr.

### APPEAL FROM MERCER CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

| 113 | 161 |
|-----|-----|
| f121 | 531 |
| 121 | 534 |
| 123 | 11 |

| 113 | 161 |
|-----|-----|
| f129 | 164 |

| 113 | 161 |
|-----|-----|
| 131 | 150 |
| f131 | 679 |

REMOVAL OF CAUSES TO FEDERAL COURT—JOINDER OF MASTER AND SER-
VANT AS DEFENDANTS—NEGLIGENCE OF ENGINEER IN BACKING
TRAIN—DEATH OF BRAKEMAN—PEREMPTORY INSTRUCTION PUNI-
TIVE DAMAGES—RECOVERY FOR ORDINARY NEGLIGENCE OF SUPERIOR
SERVANT—VARIANCE—RES GESTAE—DECLARATION OF SERVANT AD-
MISSIBLE AGAINST HIM AND NOT AGAINST MASTER—RULES OF
MASTER AS EVIDENCE.

Held:   1. Under Kentucky Statutes, section 6, a corporation and its
servant may be sued jointly for a death resulting from the
negligence of the servant.

2. Where a non-resident corporation and its resident servant are
properly joined as defendants, the non-resident defendant is not
entitled to have the cause removed to the federal court.

3. Where a brakeman, who had gone to uncouple a car for the pur-
pose of leaving it on a side track, being on the fireman's side
of the train, gave through him a signal to the engineer for
slack when he reached the car, whereupon the engineer backed
the train a little, and then in a short time again backed the
train upon a signal received from the brakeman on his side
of the train, without waiting for any signal from the brake-
man on the fireman's side, who was then between the cars for
the purpose of uncoupling the car to be detached, it was a ques-
tion for the jury whether, under the rules and the usual course
of doing the work (which required the engineer not to move the
train when he knew a brakeman was uncoupling, without a
signal from him, or notice of his safety), the engineer was guilty
of negligence in backing the train upon the signals given with-
out any knowledge of the latter brakeman's whereabouts; for,
while the cars were provided with automatic couplers, which ren-
dered it unnecessary ordinarily for brakeman to go between
cars to uncouple them, the signal for slack gave notice to the

engineer that something was wrong, and he knew that the brakeman would have to go between the cars if the bar of the automatic coupler did not work, which was the case.

4. Under Kentucky Statutes, section 6, giving a right of action for death caused by defendant's negligence or wrongful act, the court properly instructed the jury that they might allow compensatory damages if there was ordinary negligence, and punitive damages if there was gross negligence.

5. Under that statute there may be a recovery against the master for the death of a servant resulting from the ordinary negligence of a superior servant engaged in the same employment, though there could have been no recovery for the injury if it had not resulted in death.

6. The fact that plaintiff alleged gross negligence did not preclude him from recovering upon proof of ordinary negligence, as there was merely a failure to prove a part of his allegation.

7. Declarations of the engineer of the train, made several hours after the injury was inflicted, were not admissible against the master, not being a part of the res gestae,, but were admissible against the engineer himself, who was joined as a defendant, and the court properly so instructed the jury.

8. Evidence having been admitted which was competent against one of the defendants and not against the other, it was error to instruct the jury that, if their verdict be for plaintiff, it "shall be" against both defendants.

9. Defendants should be permitted on another trial to read to the jury the rules of the company in regard to the obedience of signals by the engineer.

GAITHER & VANARSDALL, FOR APPELLANTS.

ROBT. HARDING, E. M. HARDIN AND C. A. HARDIN, FOR APPELLEES.

(No briefs in the record).

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

This action was filed on February 23, 1901, by appellee to recover for the death of his intestate, against the Cincinnati, New Orleans & Texas Pacific Railway Company and Fred Milligan, who was an engineer in its service. It was charged in the petition that the death of the intestate was due to the negligence of Milligan, as engineer in the service of the railroad company, in moving a train under his charge.

At the May term of the circuit court the railroad company filed a petition for removal of the case to the circuit court of the United States, alleging that it is a resident of the State of Ohio, and that Milligan was improperly joined with it as a codefendant for the fraudulent purpose of defeating the jurisdiction of the United States court. The court overruled the motion, and this is the first question to be determined on the appeal. It is earnestly maintained that the joinder of the defendants is improper; that for the one act of the servant he can not be sued jointly with his master, and that his act must be treated either as that of an individual or that of an agent. In support of this position we are referred to several cases outside of this State so holding. But the desired weight of authority is the other way. See 15 Ency. Pl. Prac., 560; 1 Thomp. Neg., 611. The conflict in authority on the question seems to be due largely to differences of the common law forms of pleading, which no longer exists in this State. In Pom. Rem. & Rem. Rights, section 307, it is said: "In general, those who have united in the commission of a tort to the person or to property, whether the injury be done by force or be the result of negligence or want of skill or of fraud and deceit, are liable to' the injured party without any restriction or limit upon his choice of defendants against whom he may proceed. He may, at his option, sue all the wrongdoers in a single action, or may sue any one, or may sue each in a separate action, or may sue any number he pleases less than all. The fullest liberty is given him in this respect. The only exceptions are those few instances in which the tort from its very nature must be a separate act, impossible to be committed by two or more jointly. A sheriff and his deputy may be sued jointly for the trespasses and other wrongful acts done by the latter in his official capac-

ity; the deputy because he actually commits the tort, and the sheriff because he is the principal." In a note to this a number of cases are collected, and among other illustrations, these are given: "An action against principal and agent for negligence of the agent; . . . an action against one partner for negligence by the firm." See, also, Bliss, Code Pl., section 83. This rule was followed by this court in Railroad Co. v. Dixon's Adm'x, 104 Ky., 608 (20 R., 792) (47 S. W., 615) and in Railroad Co. v. Winston's Adm'r, 111 Ky., 954 (23 R., 1283) (65 S. W., 13), and in the latter case the court, after quoting section 6, Kentucky Statutes, giving the right of action in such cases, said: "By the terms of this section, where death results from the negligent act a recovery may be had therefor against the person or persons, company of companies, corporation or corporations, their agents or servants, causing the same. . . . The plaintiff has a right to proceed severally or jointly against those who are liable for the injury inflicted resulting in death." We are therefore of opinion that the circuit court properly refused to remove the case to the federal court.

It is also earnestly insisted that there was no testimony showing negligence on the part of the engineer, Milligan, and that a peremptory instruction should have been given. The evidence on behalf of the appellee tended to establish these facts: The engineer, fireman and two brakeman were engaged in transferring cars from the main line to the side track in the yards of the company in Burgin, Ky., the intestate being one of the brakemen. The purpose was to leave a car on the side track. To do this, the engineer was required to back the cars in on the side track, there being a number of cars between the engine and the car intended to be left. The cars were provided with automatic couplers, which were operated by a bar extending out from the coup-

ler to the side of the car, so that the brakeman could take hold of it while standing on the outside of the car and uncouple the cars without danger. The intestate was on the fireman's side of the engine, and went down on this side to uncouple the car in question. The other brakeman was on the other side of the train to turn the switch so that when the car was uncoupled it might be pushed in on the side track. The engineer could see this brakeman, but he could not see the intestate, Cook, who was on the other side of the train from him; and neither could his fellow-brakeman. Cook communicated with the engineer by signals to the fireman, who reported them to the engineer. When Cook got to the car that was to be cut off, he signaled for slack, which meant that the engineer must back the train a little. The engineer did this. Cook gave the stop signal, and the engineer stopped after the train had only moved from three to six feet. The iron bar of the automatic coupler was bent, and would not work the coupler, so Cook went in between the cars after he got the slack to raise the pin with his hand, as it was his duty to do. While he was doing this, the other brakeman, who had turned the switch, and did not know of the difficulty Cook had met with in uncoupling the car, gave a signal to the engineer to come on, and the engineer, without a signal from Cook, or without knowing whether he was out or not, began backing the train down to the switch. In this way Cook was caught between the cars, and dragged some 20 feet, his breastbone and ribs were crushed and mashed, and he died in a few minutes. The proper course of doing the work under the rules required the engineer not to move the train, when he knew a brakeman was uncoupling, without a signal from him, or notice of his safety. It is said that the engineer did not know that Cook was in between the

cars, and that he got a signal from the brakeman to come ahead, and therefore the negligence, if any, was in this brakeman or in the fireman, and not in the engineer. The engineer knew the purpose of the movement was to cut off the car. He knew that Cook went down on the opposite side of the train to uncouple it. When Cook asked for slack by his signal to the fireman, the engineer knew that he wanted this for the purpose of uncoupling the cars. He also knew that Cook would have to go in between the cars and draw the pin if the bar did not work, and the fact that Cook asked for slack was sufficient to put him on notice that there was some trouble; and it was a question for the jury whether, with this notice, he should have undertaken, under the rules, and the proper course of such work, to move the train without a signal from Cook, or without information as to his whereabouts. The hazardous business of coupling and uncoupling cars must not be made more perilous to life than ordinary regard for the safety of the men engaged in it permits. The engineer knew that Cook was making this uncoupling. He knew that a movement of the cars without warning to Cook might endanger his life, and it was a question for the jury whether ordinary care required that he should know where Cook was before obeying the signal from the other brakeman, who was on the opposite side of the train, and ignorant of what Cook was doing. The negligence was that of the engineer in moving the train. The fireman was not negligent, nor was the other brakeman, for he did not know of the signals that Cook had given. The witnesses for the company, including the engineer, all testify, in substance, that the injury did not occur in this way; but that Cook went in between the moving cars after he gave the slack signal, and then came out, and gave the stop signal, and fell down. This ver-

sion of the transaction is inconsistent with circumstances that seem established beyond doubt, and we are of the opinion that the jury were warranted in concluding that appellee's version was the true one.

The court properly instructed the jury that they might allow compensatory damages if there was ordinary negligence, and punitive damages if there was gross negligence. This is in accord with the provisions of the statute. Kentucky Statutes, section 6. Where death does not result, there can be a recovery by one in the service of the company for only the gross negligence of his superior who was engaged with him in the same service. Railroad Co. v. Coleman (22 R., 878) (59 S. W., 13). But where death results, and the action is under the statute, it controls, and there may be a recovery for ordinary negligence of the superior servants engaged in the same employment. Linck's Adm'r v. Railroad Co. (21 R., 1097) (54 S. W., 184). The plaintiff, having alleged the higher degree of negligence, might recover, if he established negligence, without showing that it was gross; for this would be only a failure to prove a part of his allegation.

The court allowed the plaintiff to prove before the jury a statement made by Milligan several hours after the injury to the effect that Cook did not go in on his side, but on the fireman's side; that Sinkhorn, the other brakeman, was on the opposite side, giving him the signals; that the fireman said Cook was hurt, and he got down and went to him. After he got down, Sinkhorn was still signaling him on down the track. He asked Cook how he was hurt. Cook said: "Milligan, you have caught me.. I am dying." The court, in admitting the evidence, instructed the jury as follows: "Gentlemen of the jury, this testimony is not competent as to the C., N. O. & T. P. Ry. Co. It is only com-

petent as against Milligan." As Milligan was one of the defendants in the action, his statements were competent against him. But, as they were made some hours after the occurrence, they were not part of the *res gestae*, and were, therefore, incompetent against the company. It is urged that this is a good reason for not allowing a joinder of the two defendants in one action, but the same thing occurs in all actions against joint defendants, either of tort or contract, and our statute provides for a joint action.

The court gave the jury this instruction: "If you believe from the evidence in this case that the deceased, Ed Cook, was between the cars, and enaged in the act of uncoupling them; that the engineer in charge of the train knew, or had reasonable ground to know, at the time that Cook was in that position and thus engaged; that while Cook was in that position and thus engaged said engineer received a signal to move the cars from an employe who was forbidden by the rules of the company to give such signal to the engineer under the circumstances then existing; that the engineer acted upon that signal, and moved the cars while Cook was in that position, engaged in uncoupling, thus injuring him so that he died,—then moving the train at that particular time was an act of negligence on the part of the engineer with reference to the personal safety of Cook, and you will find for the plaintiff compensatory damages against both defendants. The evidence for your consideration in fixing the amount of compensation embraces the testimony as to Cook's money-earning capacity at or about the time of his death, the state of his health, and his expectancy of life. If you believe from the evidence that the negligence of the engineer was gross, you may, in your discretion, find, in addition to compensation, punitive damages, by which is meant such damages as are imposed as a

punishment for a wrong act purposely done, or done with great indifference to the safety of life. Gross negligence is of a higher degree than ordinary negligence. It is equivalent to the absence of slight care. If your verdict be for plaintiff, it shall be against both Milligan and defendant company, and can not exceed $30,000, the amount claimed in the petition." "Unless you believe from the evidence that the propositions set forth in the first instruction are true, you will find for both defendants." "By compensatory damages is meant such sum as will reasonably compensate the estate of deceased for the destruction of his power to earn money." The instruction to the jury that, if their verdict was for the plaintiff, it should be against both Milligan and the company, would have been proper if there had been no evidence in the case that was competent against him, but incompetent against it. But the declaration of Milligan which had been admitted was incompetent against the company, and this evidence, under the other proof in the case, might have induced a verdict for the plaintiff, when, without it, the jury might have found for both defendants. The effect of the instruction was, therefore, to deny the company all benefit from the exclusion of this evidence as to it, and place it in the same position it would have occupied if that ruling had not been made. If Milligan, as engineer, was negligent in backing the train, as set out in the first instruction, his negligence was the negligence of the company, and rendered it liable as well as him; but in determining whether he was so negligent as against the company the jury should not consider any evidence which was admitted only against him and was incompetent against it.

On another trial the court will allow the defendants to read to the jury the rule under the heading, "Avoid Other

Dangers," on page 58 of the book; also rules 652 and 654, in regard to obedience of signals by the engineer. The question is for the jury whether, under the rules and the usual course of doing the work, as shown by the proof, the signals obeyed by the engineer were properly made, or should have been acted on by him without knowledge as to where Cook was, or notice to him.

There are a number of minor matters relied on for reversal, but on the whole record we are unable to see that there was any substantial error in any of these things.

Judgment reversed, and cause remanded for a new trial.