Case 67.—ACTION BY J. E. HOUCHINS AGAINST THE ILLI-
NOIS CENTRAL RY. CO. AND ANOTHER FOR DAMAGES
FOR PERSONAL INJURIES.—November 28.

## Illinois Central Ry. Co. v. Houchins, &c.

## Appeal from Muhlenberg Circuit Court.

Judgment for plaintiff. Defendants appeal. Re-
versed.

1. Removal of Causes—Joinder of Resident Defendants—Where a
petition for tort states a cause of action against a nonresi-
dent and a resident jointly, the State court has jurisdiction,
and the nonresident is not entitled to a removal of the cause
to the Federal court, which is without jurisdiction.

2. Railroads—Torts—Persons Liable—Joint Liability—Where a
railroad engineer is guilty of negligence which results in
injury to a mail clerk, the engineer and the railroad company
are jointly liable for the injury, and may be sued jointly or
severally.

3. Damages — Personal Injuries — Evidence—Life Expectancy—
Where, in an action for injuries, there is proof that plaintiff's
capacity to earn money is impaired or partially destroyed, the
probable expectancy of his life is admissible on the issue
of damages.

4. Evidence—Mortality Tables—The American Mortality Table is
competent evidence to prove one's expectancy of life.

5. Damages—Instructions as to Effect—Where, in an action for
personal injuries, a mortality table is introduced in evidence
to show plaintiff's life expectancy, the court should, if re-
quested, instruct the jury that the table shows only the
probable duration of life of healthy persons who are insura-
ble risks, and not the duration of ability to earn money,
and that it is to be considered with other proof for what
it may be worth, considering plaintiff's state of health, in
determining the probable duration of his capacity to earn
money.

6. Evidence—Admission of Servant—In an action against a rail-
road for injuries to a mail clerk, caused by the negligence
of an engineer, an admission made by the engineer long after

Illinois Central Ry. Co. v. Houchins, &c.

the accident is not part of the res gestae, and is incompe-
tent against the master.

7. Same—Admission of Party—Admissions made by a railroad
engineer, some time after an accident caused by his negli-
gence, are admissible against him in an action against him
and the railroad company for such negligence.

8. Trial—Instructions—Effect of Evidence—Where an action for
injuries caused by the negligence of a railroad engineer is
brought against the engineer and the railroad jointly, and
admissions of the engineer made long after the accident
are introduced in evidence, the court should instruct the
jury that such admissions may only be considered against
the engineer and not against the railroad.

9. Same—Instructions—The court should charge the jury that
evidence introduced to discredit a witness is not to be con-
sidered as substantive testimony.

10. Damages—Punitive    Damages—Instructions—Where    an    in-
struction is given as to punitive damages, the court should
clearly tell the jury that the giving of punitive damages is a
matter of discretion.

11. Same—Excessive Verdicts—Personal Injuries—In an action
for personal injuries, a verdict for $10,500 was excessive,
where the evidence was very uncertain as to the extent of
plaintiff's injuries, or as to what his permanent condition
would be, and, while a number of physicians testified that
the plaintiff's spine was injured, and that he was lame,
and permanently disabled from following his vocation as
postal clerk, and to a large extent a nervous wreck, yet others
testified that they had examined him carefully, but could find
nothing wrong, and that he was a fine insurance risk and
normal in every way.

JONSON & WICKLIFFE, J. S. WORTHAM, J. M. DICKINSON
and TRABUE, DOOLAN & COX for appellants.

B. F. PROCTER, G. H. HERDMAN, GREENE & VAN WIN-
KLE and S. D. HINES for appellees.

(No briefs; record out of office.)

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

J. E. Houchins was a postal clerk on a mail train
running between Paducah and Louisville on the Illi-
nois Central Railroad.   On November 7, 1902, at 11:-
36 a. m., the train on which Houchins was, collided

with an engine and tender in the yards at Central City. By reason of the collision Houchins was thrown against the end of the car. At first it was not thought that he was very much hurt, as there was no apparent injury of a serious character. He was taken to his home at Leitchfield and was confined to his bed about 20 days. After that he went about on crutches for a while, and then with a cane. Some time afterwards he undertook to go back to work on the road, and found that he could not stand the work on the train, and took a place in Louisville as transfer clerk, where he has since been employed, which pays him $900 a year. His salary as postal clerk was $1,000, and his living in Louisville is more expensive than at Leitchfield. There is a limp in his walk, but the proof is very conflicting as to the extent of his injuries. The trial occurred in January, 1904, or about 15 months after he was hurt. A number of physicians testified on the trial for the railroad company that they had examined him carefully and with the aid of the X-rays, but could find nothing wrong; that he was a fine insurance risk and normal in every way. On the other hand, a number of physicians testified that his spine was injured and that a lump had formed in his hip joint, causing lameness and permanently disabling him from following his vocation as postal clerk. According to the evidence for him he was to a large extent a nervous wreck, while according to the evidence for the railroad company he is a healthy man and in normal condition. The jury found a verdict in his behalf for $10,500 against the railroad company and the engineer in charge of the engine with which the train collided, and the defendants appeal.

Williams, who had charge of the engine with which the train collided, had taken his engine off the side

track and was going down the main track to get to his train, which was due to leave shortly. As he was going out on the main track his attention was called to the fact that the passenger train was about due, and he said that it was not due yet, that he had just looked at his time card, that the passenger train was due at 11:55, and that it was then only 11:35. He went out on the track, and just after he got on the track the passenger train came around the curve and ran into him. The fact was the passenger train was due at 11:35, and he had made a mistake in reading his time-card and had taken the leaving time of the passenger train, which was 11:55, for its arriving time, which was 11:35. Those in charge of the passenger train were in no way in fault for the collision. The train was on time, and the trouble was wholly due to Williams' making the mistake in the reading of his time card. The engineer of the train was killed; the fireman was badly hurt, and so were several other persons. The railroad company filed its petition for a removal of the case to the Circuit Court of the United States, aptly alleging that Williams was fraudulently joined as a defendant for the purpose of preventing a removal of the case to the United States Circuit Court, and that the allegations of the plaintiff's petition were known to him to be untrue, and that he did not expect to prove them when he made them, and that they were made solely for the purpose of preventing a removal of the case to the United States Circuit Court. The court overruled the motion to remove the case, and the railroad company then filed an answer, in which it admitted that the collision was by reason of the ordinary negligence of Williams, the engineer in charge of the

switch engine, and confessed to liability to Houchins in the sum of $250.

It is insisted that the court erred in refusing to remove the case to the Circuit Court of the United States, on the idea that the company can not be sued jointly with the servant whose negligence caused the injury where it was not independently at fault, that under the allegations of the petition for removal the railroad company had a right to remove the case, and that the Circuit Court of the United States must de- termine the questions arising on the allegations of the petition for removal.    We can not accede to this view.    The plaintiff's petition stated a cause of action within the jurisdiction of the State court. The joint cause of action so stated by him in his petition was not removable to the federal court under the act of Congress.  That court had no jursdiction over the case, and any order it made in a case of which it had no jurisdiction was void.    Consent can not confer jurisdiction, and if the railroad company had been beaten in that court it might at the end of the litiga- tion have raised the question of jurisdiction.    It was not contemplated by the act of Congress that every case, whether removable or not, should be subject to the control of the federal courts. If the course urged in this case is to be approved, then every case to which a nonresident is a party, although liable jointly with the others, may be removed to the fede- ral court.    The action was properly brought in the State court.    That court admittedly had jurisdiction and it certainly can not be maintained that it should have surrendered jurisdiction over the case and sent it to a court for trial which on the face of the papers was without jurisdiction to make any order in it.

It is settled that under the law of Kentucky, Williams and the railroad were jointly liable to Houchins for his injury, and might be sued jointly or severally.    (C. & O. R. R. Co. v. Dixon, 104 Ky., 608, 20 Ky. Law Rep., 792, 47 S. W., 615; Cincinnati, &c., R. R. Co. v. Cook, 113 Ky., 161, 24 Ky. Law Rep., 110, 67 S. W., 383; I. C. R. R. Co. v. Coley, 121 Ky., 385, 89 S. W., 234, 28 Ky. Law Rep., 336.)

Is this action, which confessedly lies in the State court under laws of the State, to be controlled by the federal court, and may that court, if of opinion that a joint action does not lie, take jurisdiction of the case?   Such a rule would deprive the litigant of his right to try his case under the laws of the State, and would compel him to go into the merits of his case before a tribunal without jurisdiction to sit in it.   If the State court makes a mistake, an appeal may be taken to this court; and if the railroad company feels aggrieved by the decision of this court it may in every case prosecute an appeal to the Supreme Court of the United States on the question.   So it is not without remedy, and there is no possibility of its rights not being properly protected.

Houchins proved on the trial that he was 29 years of age at the time of the injury.   He introduced on his behalf W. T. Morgan, who, over the objections of the defendants, was allowed to testify as follows:

"Q. According to the American Tables of Mortality, what is the probable expectation of the life of a man 29 years of age?

"A. This is a book of the Mutual Life Insurance Company of New York.   Take a man at the age of 29, the probable expectancy of life for him would be 36.2 years; a man in good health and 29 years old, his expectation of life would be 36.2 years."

"Q. That is the American Table of Mortality?"

"A. Yes, sir."

"Q. This book is gotten out by the Mutual Life-Insurance Company of New York?"

"A. Yes, sir; that book was sent me this year."

According to Dr. Wigglesworth's Table, which has been adopted by this court, the expectancy of life of a man at 29 years old is 30.66 years. The evidence objected to showed that the expectancy of life at 29 years was nearly 6 years longer. When the action is to recover for the death of a person injured, as the measure of recovery is the value of his capacity to earn money, standard tables, showing the ordinary expectancy of life, are held to be competent. Where, as in this case, there is proof tending to show that the plaintiff's capacity to earn money is impaired or partially destroyed, the probable expectancy of life is equally competent; for the measure of recovery here is in part compensation for the impairment of his capacity to earn money. If, as is conceded, evidence of the ordinary expectation of life may be received where the capacity to earn money is destroyed by death, it is hard to see why such evidence can not be equally received where the capacity to earn money is partially destroyed; for in either case the jury are, in making up their verdict, to be governed by the capacity to earn money which has been destroyed, and whether this is a partial or total destruction is not material. (Greer v. L. & N. R. R. Co., 94 Ky., 169, 14 Ky. Law Rep., 876, 21 S. W., 649, 42 Am. St. Rep., 345.)

The Carlisle Mortality Tables are based upon actual observation in the towns of Northampton and Carlisle, England. The deaths were taken, not from selected lives, but from the population generally.

These tables have been very generally admitted by the courts of this country.  (Lincoln v. Power, 151 U. S., 436, 14 Sup. Ct., 387, 38 L. Ed., 224; 17 Am. & Eng. Ency. of Law, 900.)  The field, however, was so narrow that they have never been regarded as satisfactory.  It is a matter of common knowledge that the expectancy of life is increasing.  The American Table of Mortality has been made out from the combined experience of the life insurance companies of America, and is now regarded as the standard throughout the United States.  It is true that it is based on insurable lives or healthy persons.  Still, there is no great difference between it and the Carlisle Table, as by the Carlisle Table the expectancy of life of a person 29 years old is 35 years.  In cases of this character the aim of the court is to get the best information attainable.  The American Tables of Mortality have been recognized by many of the courts of the country as perhaps the best means of arriving at the expectancy of life.  The Wigglesworth Tables were made before 1858.  Since then there has been great advance in medical science, and the data upon which such tables are calculated are much fuller now than then. The court, as information increases, will use that table which is the best and most reliable. The American Mortality Table was held competent in the case of Greer v. L. &. N. R. R. Co., 94 Ky., 169, 14 Ky. Law Rep., 876, 21 S. W., 649, 42 Am. St. Rep., 345, and this case was followed in L. & N. R. R. Co. v. Gordan 24 Ky. Law Rep., 1819, 72 S. W., 311. After maturely reconsidering the subject we have reached the conclusion to follow the rule heretofore laid down, and to hold that in each case the expectancy of life may be shown, as any other fact, by the best evidence obtainable, and that, as improved tables

come into use which are of standard authority, they may be given in evidence, instead of the older tables which they supersede.

Such tables show only the probable continuance of life, and not the duration of ability to earn money. They show the probable duration of life of healthy persons who are insurable risks, and the court, when requested, should tell the jury what the table shows, and that it is to be considered by them, in connection with the other proof in the case, for what it may be worth, considering the plaintiff's state of health and circumstances, in determining the probable duration of his capacity to earn money. (3 Wigram on Evidence, sec. 1698; Gordon v. Tweedy, 49 Am. Rep., 813.)

The court allowed the plaintiff to prove by a witness that Williams, long after the accident, acknowledged to backing his engine out on the main track on the time of the train, saying he forgot the dead time the train had there. This was no part of the res gestae, and the admission by the servant was incompetent against the master. (C. & O. R. R. Co. v. Smith, 101 Ky., 111, 18 Ky. Law Rep., 1079, 39 S. W., 832.) The evidence was, however, competent against Williams, who was sued jointly with the railroad company; but, when it was admitted by the court without any admonition, the jury would understand it to be competent against all the defendants. In admitting the evidence the court should have cautioned the jury that it could only be considered against the defendant Williams, and not against the other defendant. (Cincinnati, &c., R. R. Co. v. Cook, 113 Ky. 161, 24 Ky. Law Rep., 110, 67 S. W., 383.) It often happens, in suits against two defendants, that evidence of admissions is competent against the one who

made them and not competent against his codefend-
ant; yet is it everyday practice to admit it, with pro-
per admonition to the jury as to the defendant
against whom it may be considered.   There is noth-
ing in this class of cases to except it out of the
general rule, but it is a serious error for the court
to admit the evidence without cautioning the jury
as to the person against whom it may be considered.
(I. C. R. R. Co. v. Winslow, 119 Ky., 877, 84 S. W.,
1175, 27 Ky. Law Rep., 329.)   The statement was
made in a deposition.   The writing is the best evi-
dence.   If proper foundation was laid, the state-
ment might be used to discredit Williams as a wit-
ness; but the court should tell the jury it is not in
this event to be considered as substantive testimony.

On the question of damages the court, after direct-
ing the jury to find compensatory damages, added
these words to the instruction: "If the jury believe
from the evidence that the said collision was caused
by the gross negligence of the defendant railroad
company's agents or servants in charge of the engine
with which passenger train collided on the occasion
in controversy, then and in that event the jury may,
in addition to compensatory damages, if any, award
the plaintiff punitive damages against said defend-
ant Illinois Central Railroad Company, not exceed-
ing, however, in the aggregate $15,000, the amount
claimed."

As to whether there was enough in the evidence to
warrant the awarding of punitive damages the court
is equally divided.   But when an instruction is given
as to punitive damages the court should clearly tell
the jury that the giving of punitive damages is a
matter of discretion, and in this case the court should
tell the jury that if they believe, from the evidence,

that the collision was caused by the gross negligence of the railroad company or its servants in charge of the engine, then, in addition to compensatory damages, if any, the jury may or may not, in its discretion, award the plaintiff punitive damages in such sum as, under all the evidence, they deem right, not exceeding, however, $15,000, the amount claimed in the petition. On another trial the first and second instructions will be combined in one instruction, as this will simplify the matter somewhat for the jury.

It is earnestly insisted that the verdict of the jury is palpably excessive, the result of passion and prejudice. In view of the uncertainty of the evidence as to the extent of the plaintiff's injuries, or as to what his condition will permanently be, we are of opinion that the verdict is excessive, and that, on the whole case, a new trial should be awarded.

Judgment reversed, and cause remanded, for further proceedings consistent herewith.