CASE 68.—ACTION BY TINSLEY STEWART'S ADMINISTRATOR AGAINST THE LOUISVILLE & NASHVILLE R. R. CO. FOR THE DEATH OF HIS INTESTATE.—January 29.

# Louisville & Nashville R. R. Co. v. Stewart's Admr.

Appeal from Boyle Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for plaintiff.    Defendant appeals.—Affirmed.

1. Master and Servant—Injuries to Servant—Questions for Jury.—In an action for the death of a brakeman from injuries sustained in a derailment, alleged to have been due to the unsafe condition of the track and the excessive speed of the train, evidence held sufficient to warrant a submission of plaintiff's case to the jury.

2. Pleading—Amendment of Answer—Condition of Cause.—It was not an abuse of the court's discretion, in an action for the death of a brakeman from injuries sustained in a derailment, to refuse to allow an amended answer to be filed after plaintiff had concluded her evidence, pleading that it was

the brakeman's duty, in case the train broke down or the speed became excessive, to apply a Sullivan safety valve, with which the train was equipped, and stop it, and that his failure to do so was contributory negligence, where the railroad company did not show facts sufficient to bring to the brakeman's notice, either that the track was unsafe, or that the train had become derailed, and the speed of the train being under the control of the conductor or engineer.

3. Evidence—Opinion Evidence—Qualification of Witnesses— Speed of Trains.—A witness living near a railroad, and who has frequently watched trains pass, and sometimes timed them, is qualified to testify to the speed of a train.

4. Master and Servant—Injuries to Servant—Evidence—Condition of Track at Other Places.—In an action for the death of a brakeman from injuries sustained in a derailment, evidence as to the track's condition 150 to 200 yards from the point of accident was admissible; there being no evidence definitely fixing the place of derailment.

5. Same—Subsequent Repairs.—In an action for the death of a brakeman from injuries sustained in a derailment, evidence that the new rails which had been laid were larger than the old rails which they joined, and were raised higher by new cross-ties and ballast, was admissible to show the condition of the track.

6 Same—Admissibility—Speed of Train at Other Places.—In an action for the death of a brakeman from injuries sustained in a derailment, it was error to admit evidence of the train's speed 1½, 3, or 5 miles distant from the place of the wreck to show its speed at that point.

7. Trial—Reception of Evidence—Restriction to Special Purpose. —Where, in an action for the death of a brakeman from injuries sustained in a derailment, the section foreman testified that the track was in good condition, and that it was safe for trains to run over it at 80 or 90 miles an hour, and the conductor testified that he examined the track, and was unable to assign the cause for the derailment, evidence of a statement by the section foreman to the conductor that the wreck was due to his fast running, and of a statement by the conductor to the section foreman that the wreck was caused by the bad track, was competent; witnesses having been first asked if they had made such statements, and the court having admonished the jury that such evidence was admissible only for the purpose of affecting their credibility.

8. Master and Servant—Injuries to Servant—Evidence—Precautions Against Recurrence of Accident.—In an action for the

death of a brakeman from injuries sustained in a derailment, it was error to receive evidence that after the accident the old rails and crossties had been taken out and replaced with new ones.

9. Same—Actions—Issues and Proof.—In an action for the death of a brakeman from injuries sustained in a derailment, wherein the negligence alleged was the unsafe condition of the track and the excessive speed of the train, it was not error for the court, in its instructions, to permit a recovery, either on account of the track's defective condition, or the speed of the train, or the two combined.

1. Death—Actions—Instructions as to Damages.—An instruction, in an action for the death of a brakeman, that if the jury found for plaintiff, to award such a sum in compensatory damages as they believed from the evidence would reasonably compensate decedent's estate for the destruction of his power to earn money, in any sum, in their discretion, not to exceed the amount sued for, is not, because of the use of the clause "any sum in your discretion," susceptible of the construction that it gave the jury to understand that they were not limited to compensate decedent's estate for the destruction of his earning power, but that they might award such further sum as in their discretion they saw proper.

11. Death—Degree of Negligence.—In an action for the death of a brakeman, proof of ordinary, not gross, negligence is alone required.

BENJAMIN D. WARFIELD, CHAS. R. McDOWELL and CHAS. H. RHODES for appellant.

ROBERT HARDING, RAWLINGS & VORIS and GREENE & VAN WINKLE for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Tinsley Stewart, who was a brakeman on appellant's train, was killed at a point near Gravel Switch in Marion county, Kentucky. His administratrix instituted this action to recover damages on account of his death. The jury awarded plaintiff damages in the sum of $12,000, and the defendant appeals.

A reversal is asked on the following grounds: First, the failure to give a peremptory instruction in favor of the defendant; second, error of the court in refusing to permit defendant to file an amended answer pleading decedent's contributory negligence; third, errors in the admission and exclusion of evidence; fourth, errors in giving and refusing instructions; fifth, excessive damages.

1. Plaintiff sought a recovery on the ground of the unsafe and dangerous condition of the track and roadbed at the place of the accident, and the excessive rate of speed of the train on which decedent was riding. The testimony of the plaintiff was to the effect that the train upon which decedent was brakeman consisted of an engine and about 20 cars. At the point of the accident the train was running from 40 to 50 miles an hour. When the accident occurred, several of the cars in the middle of the train were derailed; the engine, with about 10 cars which remained on the track, proceeding on its way. The decedent was on one of the cars that was derailed. He was thrown to the ground, run over, and badly mangled, and died some two or three days later. The track at the place of the accident was in a defective and unsafe condition for the passage of trains over it. There were from 100 to 150 yards of track that had no ballast between the cross-ties. This ballast had been taken out about eight days before the wreck, preparatory to putting down new rails and cross-ties. There was some evidence that the life of the rails was gone. Every third cross-tie was rotten, and in such condition that it would not hold spikes. The rails were surface bent and kinked, and had high centers and low joints. The track would not stay in line, and was what is known in railroad parlance as a "swinging

track." For eight days prior to the accident many heavy trains had been run over the track while it was in such defective condition. The proof of the defendant was to the effect that the speed of the train was only 25 to 30 miles an hour; that the track was in safe condition, and that a train running even 80 or 90 miles an hour could run over it with safety. Some of defendant's witnesses stated that they did not remember whether the track at the point of the accident was ballasted or not. Others said that the track was not fully ballasted, but had about half enough ballast. It was also shown that the cars had been properly inspected and tested prior to the accident, and that they were in good condition. Several of defendant's witnesses stated that they examined the track soon after the wreck, and that in their opinion the wreck was not due to its unsafe condition. They did not undertake, however, to say what had caused the wreck. There was also proof that the switch ties under the track where the derailment occurred were in such fair condition that they were left under the track after the wreck, with the exception of possibly 8 or 10 ties out of 62. These 8 or 10 ties, while partly rotten, were not wholly so, and were able to hold the track. We have not attempted to give the evidence in detail, because it will be necessary later in this opinion to consider the objections to the evidence; but, in our opinion, there was abundant evidence upon which to submit the case to the jury. The defendant did not attempt to account for the wreck at all. It produced no facts which would lead the jury to conclude that it was the result of any defect in the train which ordinary care on its part would not have detected. At one place there is a mere suggestion that it might have occurred from a broken flange, but no

facts are shown upon which to base this conclusion. Several witnesses having testified that the track was in a defective condition by reason of rotten ties and worn rails, and that the train was going at a rate of 40 to 50 miles over such defective track, and there having been submitted to the jury no other reasonable hypothesis by which the wreck could be accounted for, the case should have gone to the jury, and we are unable to say that the facts adduced in evidence do not warrant the conclusion which they reached.

2. At the conclusion of plaintiff's evidence the defendant offered an answer pleading contributory negligence on the part of decedent. This plea was based on the fact that the proof developed that the train was equipped with a Sullivan safety valve, which was located about the middle of the train, the place occupied by the decedent at the time of the accident. It was contended by the defendant that it was the decedent's duty, in case the train broke down or the rate of speed became excessive, to apply this brake and stop the train, and that his failure to do so under the circumstances constituted contributory negligence which would prevent a recovery. In view of the well-known fact that the speed of the train is under control of the conductor or engineer, and that the defendant's avowal did not show facts sufficient to bring to the notice of decedent, either that the track was unsafe, or that the train had become derailed, thus producing such an emergency as to require decedent to apply the Sullivan safety valve, we can not say that the court abused its discretion in refusing to allow the amended answer to be filed after plaintiff had concluded her evidence.

3. We shall next consider the errors alleged to have been committed by the court in admitting and

excluding evidence.  In the first place it is contended
that several witnesses, who testified for plaintiff as
to the speed of the train, did not qualify themselves
as experts.  While of course it would not be proper
to permit a person to testify to the speed of the train
who had never seen a train or had had no experience
whatever in watching trains, we think that, where the
witnesses live near a railroad track, and have fre-
quently watched trains as they passed, and have
sometimes timed them, they are qualified to testify
to the speed of trains.  Without discussing and taking
up in detail the testimony of each witness who testified
as to the speed of the train in question, we may say
that in each instance the court first required the wit-
ness to give his experience in watching trains and
judging of their speed before he permitted him to
testify.   Under these circumstances there can be no
doubt that the testimony of such witnesses was com-
petent.

It is contended that the court erred in permitting
G. A. Stewart to testify as to the condition of the
track 150 to 200 yards from the point of the accident.
As there was no evidence definitely fixing the place
of derailment, we are of the opinion that the evidence
complained of was admissible.  It is further objected
that this witness and others were permitted to testify
to the fact that in putting down new rails previous to
the time of the accident the new rails were much
larger than the old ones, the former being what are
known as "80-pound rails," and the latter being 70-
pound rails. According to the plaintiff's evidence the
old rails, where the ballast had been taken out be-
tween the cross-ties, were left in their original posi-
tion.   The portion of the track which had been re-
newed with new rails, new cross-ties, and ballast was

therefore raised higher than it originally was by the new rails, which were much larger than the old ones. As the condition of the track was the point at issue, we think such evidence was competent as going to show whether or not the defendant was negligent in leaving the track in that condition. The very fact that a worn-out rail was attached to a new rail of a larger size and placed in a higher position than the old rail might have been sufficient to cause the wreck. At any rate, we can not see any error in permitting the witnesses to give evidence tending to show the true condition of the track at the point of the accident.

It is next objected that certain witnesses were permitted to testify to the speed of the train at points as much as 1½ miles and 3 miles and 5 miles distant from the place where the wreck occurred. Counsel for appellee contends that this evidence was admissible because it was shown that much of the 5 miles, if not nearly all of it, was on a downgrade, and that there was no abatement of the speed as the train ran the 5 miles to the point where the wreck occurred; that it was further shown that G. A. Stewart, who testified to the speed of the train at a point 5 miles from the place of the wreck, also testified that when the train passed him it was at 11:50 o'clock; that at 12:05 he received a phone message from Gravel Switch, from Mike Devers, informing him that the train had been wrecked and that Tinsley Stewart had been injured. In addition to this fact it was shown from Devers' testimony that he sent the message seven or eight minutes after the wreck occurred. According to this testimony it was developed that the train had run the 5 miles in seven or eight minutes. As the speed of a train may be checked within a short distance, we are inclined to the opinion that evidence

of the speed of a train 5, or even 1½ miles distant from the place of the wreck is incompetent. The fact that a train is going at a certain rate of speed at one point creates no presumption that the rate of speed will be uniformly maintained for a long distance. The train being in control of the conductor or engineer, and not subject merely to natural laws producing uniformity in the rate of speed, many intervening causes may occur in so great a distance to change the rate of speed, or even bring the train to a complete stop. As the plaintiff based his right of recovery both upon the unsafe condition of the track and the train's excessive rate of speed, we are of opinion that the court erred in admitting evidence of the rate of speed of the train at points as much as 1½, 3 or 5 miles distant from the place of the wreck.

Complaint is further made that the court permitted plaintiff to prove by D. T. Dorsey that on the afternoon of the injury Scott Whitehouse, a section foreman, addressing James Roller, the conductor, said: "This wreck is caused by your fast running here." Complaint is also made that the court permitted James Minor to testify that the conductor, Roller, at the same time and place, said to Scott Whitehouse: "This wreck was caused by your bad track here." It appears, however, that this evidence was given in rebuttal, and after the witnesses had been asked if they had made such statements at the time and place referred to. Furthermore, Whitehouse testified for defendant that the track was in good condition, and it was safe for the trains to run over it at 80 to 90 miles an hour. Roller had also testified that he examined the track, and was unable to assign a cause for the derailment of the train. The court admonished the jury that such evidence was admissible only for the

purpose of affecting the credibility of Roller and Whitehouse. With this admonition of the court there can be no doubt that such evidence in rebuttal was perfectly competent.

Counsel for appellant complain of the ruling of the court in permitting Charles Graham, upon his re-direct examination, to testify that the section gang took out the old rails and cross-ties after the wreck and put in new ones. It is a well-settled rule of law in this State that evidence of precautions taken or repairs made after an accident is not admissible as evidence that the defendant was negligent in not having made the repairs or taken the precautions prior to the accident. L. & N. R. R. Co. v. Morton, 121 Ky. 398, 89 S. W. 243, 28 Ky. Law Rep. 355. Counsel for appellee contend, however, that the matters complained of were first brought out by defendant's attorney. In this counsel are mistaken. Counsel for defendant brought out evidence of the purpose for which the subsequent repairs were made only to counteract the effect produced by plaintiff's evidence that such repairs had been made. That being the case, the evidence was of a very damaging character. With such evidence before the jury counsel might well have argued that the track must have been in a bad condition, else the repairs would not have been made. In such a state of case scarcely any other evidence of the unsafe condition of the track would be an admission that the repairs should have been made prior to the accident. We, therefore, conclude that the evidence complained of was very prejudicial to the substantial rights of the defendant, and should not have been admitted by the court.

4. We shall next consider the alleged errors in the

instructions. The court instructed the jury as follows:

"(1) If you believe from the evidence in this case that the roadway, or any part of same, at the time and place of the injuries complained of to said Stewart, was in an unsafe condition for the passage of said train over same, and said unsafe condition was due to, or caused by, the failure of defendant company's employes, who were charged with the duty of keeping same in said reasonably safe condition, to use ordinary care to have same in such reasonably safe condition for the passage of said train over same, and said unsafe condition was known, or by the use of ordinary care could have been known, to them, and because of said unsafe condition aforesaid a portion of said train was thrown from or caused to leave said tracks and roadway, thereby inflicting injuries upon said Stewart of which he died, you should find for the plaintiff; or, if you believe from the evidence that defendant's employes in charge of the engine drawing said train upon which said Stewart was located at the time and place he received the injuries resulting in his death ran said train at a too high and dangerous or unsafe rate of speed over said roadway and track at said time and place, and because of said too high and dangerous or unsafe rate of speed over same a portion of said train was thrown from or caused to leave said track or roadway, thereby inflicting the injuries from which said Stewart thereafter died, you should find for the plaintiff; or, if you further believe from the evidence that a portion of said train was thrown from or caused to leave said track and roadway, because of both the unsafe condition of same as above set out, and of the too high and dan-

gerous or unsafe rate of speed of said train, as above set out, combined, then you will find for the plaintiff, and if you do not so believe, you will find for defendant.

"(2) If your finding be for the plaintiff upon any one or all of the three states of case set out in instruction No. 1, then you will find such a sum in compensatory damages as you believe from the evidence will reasonably compensate the estate of Tinsley Stewart, deceased, for the destruction of his power to earn money, in any sum in your discretion not to exceed the sum of $30,000.

"(3) Ordinary care means, as used in these instructions, that degree of care which ordinarily prudent persons would exercise under like conditions and similar circumstances.

"(4) You are instructed that the happening of the accident, of itself, from which Tinsley Stewart lost his life, cannot be taken as evidence of negligence upon the part of the defendant company, but may be considered in connection with the other evidence in the case as to whether the defendant was guilty of negligence or not, and if you believe from the evidence that the track, at the point where the car or cars, or any of them, first left the track, and that the wreck occurred as a result thereof, was in a reasonably safe condition for the passage of trains such as the one that was wrecked, and that the accident did not happen either on account of said track not being in a reasonably safe condition, or on account of the excessive and high rate of speed, but from cause, or causes, other than above stated, then in that event it was the one of the risks incident to decedent's employment, and for which his estate cannot recover, and you will find for the defendant."

It is contended by counsel for appellant that instruction 1 is erroneous in submitting to the jury, as an issue of fact to be decided by them, any question as to whether or not the derailment of the train was due to the condition of the roadbed and track, or to the speed at which the train was running. Counsel insist that all the jury could do, under the testimony, was to guess as to the cause of the accident, and that, the evidence being equally consistent with the existence or nonexistence of negligence, it was improper for the court to leave it to the jury to guess away defendant's rights. It is also insisted that the instruction is erroneous because it permitted a recovery on account of the condition of the roadbed and track alone, or on account of the rate of speed alone, or on account of the combined condition of the track and rate of speed. We cannot see that the instruction given authorizes the jury to guess away defendant's rights. As stated in discussing the question whether or not a peremptory instruction should have gone for the defendant, there was abundant evidence to authorize the submission of plaintiff's case to the jury. There was proof, both of the unsafe condition of the track and roadbed, and the excessive and dangerous rate of speed. The defendant's witnesses did not undertake to assign any cause for the wreck. There being no evidence that the wreck was produced from any other cause, and plaintiff having advanced a theory as to the cause of the wreck, and having supported it by the testimony of several witnesses, it was certainly proper to submit plaintiff's side of the case to the jury. It was not error to permit a recovery either on account of the defective condition of the roadway or the rate of speed, or the two combined, because these were issues raised

by the pleadings, and the very questions which the jury should have been called upon to decide.

It is next insisted that instruction 2 is erroneous in fixing the measure of damages. Complaint is made of the use of the expression "in any sum in your discretion." It is contended that this expression gave the jury to understand that they were not limited to compensate Stewart's estate for the destruction of his power to earn money, but that they might award such further or additional sum as in their discretion they saw proper, and, this, too, without reference to, or being bound by, the evidence. We do not think, however, the instruction is susceptible of the construction placed upon it by counsel for appellant. The instruction plainly told the jury that in the event they found for the plaintiff they should find such a sum in compensatory damages as they believed from the evidence would reasonably compensate the estate of Tinsley Stewart, deceased, for the destruction of his power to earn money. The use of the language "in any sum in your discretion" did not give the jury unlimited discretion. The discretion was plainly limited to such a sum as would compensate the estate of Stewart for the destruction of his power to earn money. Furthermore the instruction did not authorize a finding without reference to the evidence. It told the jury to "find such a sum in compensatory damages as you believe from the evidence," etc. We, therefore, conclude that the instruction was not erroneous.

The defendant offered the following instructions:

"(X) You are instructed that Tinsley Stewart was an employe of the Louisville & Nashville Railroad Company at the time and place he received the injuries which resulted in his death, and before you

can find for plaintiff, either on the ground that the train was being negligently run at the time at a dangerous, excessive, or reckless rate of speed, or on the ground that defendant had negligently suffered and permitted the track or roadbed to become and remain in an unsafe condition, you must further believe that the negligence of defendant with respect to one or both of said matters was gross and not ordinary.

"(Y) Although you may believe from the evidence that defendant was guilty of negligence in operating said train so far as its rate of speed was concerned, yet if you further believe from the evidence that the deceased, Tinsley Stewart, on the occasion of the injuries received by him, was himself guilty of negligence which contributed to the derailment of a portion of the train upon which he was riding at the time, and but for which negligence the derailment would not have occurred, you will in that event find for the defendant on the question of speed."

It is contended that the court erred in refusing to give these instructions. The court did not err in refusing to give instruction X, for this was a death case, and proof of ordinary negligence was sufficient. C. N. O. & T. P. Ry. Co. v. Cook's Adm'r, 113 Ky. 161, 67 S. W. 383, 23 Ky. Law Rep. 2410; Linck's Adm'r v. L. & N. R. R. Co., 107 Ky. 370, 54 S. W. 184, 21 Ky. Law Rep. 1097. Having heretofore held that the court did not abuse its discretion in refusing to permit the defendant to file an amended answer pleading contributory negligence on the part of the deceased, it necessarily follows that the court did not err in refusing to give instruction Y, offered by the defendant, as that instruction contained no other defense than that of contributory negligence.

5. Appellant's last ground for reversal is that the damages are excessive. In view of our conclusion, that this case must be reversed on other grounds, we deem it unnecessary to discuss this question.

For the reasons given, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.