FRANK E. SHAPPY *v.* WILLIAM J. McGARRY.

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 2, 1934.

*Fenton, Wing & Morse* for the defendant.

468

*Vernon Loveland* and *James P. Leamy* for the plaintiff.

THOMPSON, J. The plaintiff seeks to recover damages for injuries which he suffered while riding with the defendant in the automobile of the latter, and which he alleges were caused by the negligence of the defendant in the operation of his automobile. There was a trial by jury and a verdict and judgment thereon for the plaintiff. The defendant excepted.

■ At the close of the plaintiff's evidence, and again at the close of all the evidence, the defendant moved for a directed verdict in his favor on the ground that, viewing the evidence in the light most favorable to the plaintiff, it appears, as matter of law, that the plaintiff was riding with the defendant as a gratuitous guest at the time of the accident, and that the defendant was not guilty of gross or wilful negligence in the operation of his automobile. Each motion was overruled and exception saved. The defendant waived his exception to the overruling of the motion made at the close of plaintiff's evidence by proceeding with the trial and introducing evidence, so we consider only the exception to the overruling of the motion made at the close of all the evidence.

■ The court below ruled, as a matter of law, that the defendant was not guilty of gross or wilful negligence in the operation of his automobile. The only ground of the motion briefed by the defendant is that, at the time of the accident, the plaintiff was riding with the defendant as a gratuitous guest and not as a passenger for hire. There is evidence in the case from which a jury could find that the plaintiff was riding with the defendant as a gratuitous guest at the time of the accident, but the evidence is not all that way.

The following facts are undisputed. Kinsman & Mills, Inc., is a corporation doing business in the city of Rutland, and is engaged in the sale of granite and marble products. At the time of the accident, the defendant was president and manager of the corporation. He had charge of the men employed by it and gave them their orders as to their work. The plaintiff was a salesman employed by the corporation. He commenced work for it on December 5, 1932. Under the contract of his employment he received a salary of twenty dollars per week, a commission of ten per cent. on all products he sold, and his expenses

while at work for the corporation. The defendant gave him his orders as to his work.

The jury, considering the evidence in the light most favorable to the plaintiff, could have fairly and reasonably found the facts to have been substantially as follows: On Thursday morning, December 29, 1932, at about 6.15 a.m., the defendant, the plaintiff, and two other employees of the corporation left Rutland in the automobile of the defendant, which he was driving, to go to Barre, Vt., to inspect a large monument that had been made there for Kinsman & Mills, Inc. All the occupants of the automobile were employees of the corporation. The trip to Barre was on the business of the corporation. The plaintiff went on the trip because he was ordered to go by the defendant. As they approached an underpass on the Rutland Railroad, about a mile, northerly of the center of the city of Vergennes, the automobile, because of the ordinary negligence of the defendant in operating it, skidded on the ice on the cement pavement and went into a guard rail or fence on the side of the highway, and the plaintiff received the personal injuries for which he seeks to recover damages. The plaintiff did not pay, nor expect to pay, anything to the defendant for the trip to Barre, and the defendant did not expect to receive anything from him for the trip.

The plaintiff called the defendant as a witness. When he was being questioned about the trip to Barre, he testified as follows: "Q. Won't you tell the jury, Mr. McGarry, just how the expense of the operation of your automobile for Kinsman & Mills on this trip was handled? A. Very simple, it is just a charge card that I carried and use at a filling station, if that is the question you want answered, Jim. Q. In other words, the Company was paying for the gas and oil that you used on the trip through a charge card at a gasoline station? A. Standard. Q. And you were paid by Kinsman & Mills for this day's travel, were you not? A. Yes. Q. Were you under a weekly salary? A. Yes. Q. And your weekly salary was to cover not only work in the office but work of this type, was it not? A. Yes, * * *. Q. He (referring to plaintiff) went on your approval? A. Yes, he did." The defendant, on being asked: "And so far as you related, the purpose of Mr. Shappy's trip was to acquaint himself with facts which would be of aid in the business of Kinsman & Mills? replied "Correct." The plaintiff was paid his

weekly salary by the corporation which included the day of the trip to Barre.

It can fairly and reasonably be inferred from the foregoing facts and evidence that the plaintiff started on the trip to Barre by order of his employer, and that he was acting within the scope of his employment when he suffered his injuries.

It appears from the express terms of our guest statute, P. L. 5113, that it was the intent of the Legislature in enacting it that the owner or operator of an automobile shall not be liable in damages for injuries sustained by a guest riding gratuitously in such automobile, caused by the negligence of the operator, unless such negligence is gross or wilful; and that such owner or operator shall not be liable in damages for injuries sustained by an occupant of the automobile, caused by the ordinary negligence of the operator, unless such owner or operator has received or contracted to receive pay for the carriage of such occupant, or, in other words, unless such occupant is a passenger for hire.

Since the court below ruled as a matter of law that the defendant was not guilty of gross or wilful negligence in the operation of his automobile, the question for us to determine is whether there is any evidence from which it can reasonably be inferred that the plaintiff was riding with the defendant as a passenger for hire. The precise question has not been raised before in this Court.

None of the authorities to which we have been referred are in point. The case most in point, and it is not cited in either brief, is *Loftus* v. *Pelletier,* 223 Mass. 63, 111 N. E. 712, 713. In that case the plaintiff, a district nurse, was injured because of the negligence of the defendant, a doctor, in the operation of his automobile while driving her to visit a patient. The defendant contended that the relation between the parties was that of persons engaged in a common enterprise.

The court, when holding that it could not be ruled as a matter of law that the parties were engaged in a common enterprise, said: ''The plaintiff was hired and paid by the Women's Club of Winchendon to attend patients (who 'could not afford a nurse') when called upon to do so by the doctor in charge. * * * She testified that it was 'a common thing for the different doctors to take you to their cases when they were making their calls' when the patient was so far out of town as the patient was to whom the defendant was taking the plaintiff at the time here in

question. The patient * * * 'was over two miles from town.' The defendant testified that: 'It was her (the plaintiff's) duty to go with me on my request.' These two pieces of testimony taken together warranted a finding that a right to be transported to the patient was an implied term of the plaintiff's contract of employment when the patient lived some two miles out of town, and that under that contract the plaintiff was bound to accept the doctor's automobile as the method of that transportation when it was offered to her. From these findings it followed or at least could have been inferred that at the time of the accident the plaintiff was being carried under her contract of employment, that is to say, that she was being carried by the defendant for hire.''

In the instant case, it can fairly and reasonably be inferred from the testimony of the defendant, which we have quoted, that it was a term of his contract of employment with the corporation that when he used his automobile in the business of the corporation it would pay him for such use and for the gasoline and oil used.

It appears from other testimony of the defendant that the purpose for which the plaintiff started on the trip was for the mutual benefit of his employer and himself. When the defendant ordered the plaintiff to go on the trip it was his duty to obey and to accept the method of transportation provided by the defendant.

It is difficult to believe, and we do not believe, that it was the intention of the defendant and of the corporation that if a servant, by order of the corporation, went with the defendant in his automobile on the business of the corporation, the servant would have to pay the defendant for his transportation to avoid becoming a guest within the purview of the statute.

We think that under the circumstances of this case a jury might find that pay for transporting the plaintiff was included in what the corporation paid the defendant for the use of his automobile, and that the plaintiff was riding with the defendant as a passenger for hire. As the evidence is conflicting as to whether the plaintiff was riding with the defendant as a guest or as a passenger for hire, the court did not err in overruling the defendant's motion for a directed verdict.

The injuries which the plaintiff received in the accident were fractures of the posterior neural canal and the sixth and

seventh cervical vertebrae, commonly known as a broken neck.

The plaintiff's evidence tends to show that he has suffered and is suffering severe pain from his injuries, that he is unable to feed himself or to dress himself; that he is incapacitated from doing any work, and that such incapacity will extend into the future. His neck is stiff, and there is medical evidence that such stiffness and the pain will continue as long as he lives. It appears that Kinsman & Mills paid him his weekly salary of twenty dollars until some time in February, 1933, and it has paid him nothing since them.

The court instructed the jury that if they found the plaintiff was entitled to recover, he would be entitled to recover for all physical pain he had suffered as the result of his injury and shown by the evidence to be the direct and actual result of the defendant's negligence; that he "would also be entitled to recover for any loss of wages shown by the evidence to be the direct result of his injuries"; that in cases like this, the plaintiff can have but one recovery; that if the jury found that the plaintiff would suffer damages in the future on account of his injuries, they would award damages for them, that, in that event, "the plaintiff would be entitled to recover the present worth in money for any future pain and suffering, loss of earnings, or for any future or permanent injury to his health or loss of functions"; and the court told them how to ascertain the present worth of such damages.

The defendant excepted "to the submission to the jury of the question of permanent injuries in this case on the grounds that there is no evidence in the case upon which a verdict for permanent injuries or for permanent pain and suffering could be based, and that the jury's verdict, if any, must be based on pure speculation. There is no evidence in the case of the age of this defendant, no evidence of his life expectancy, and any verdict based on that charge must be pure speculation. My associate reminds me that I should have included loss of wages because of future pain and suffering."

The defendant has briefed three questions under the exception: (1) There was no evidence of plaintiff's age; (2) there was no evidence of the plaintiff's life expectancy; (3) there was no evidence as to what his commissions amounted to, outside of his salary.

■ ■ 1. No evidence was introduced of. the age of the plaintiff. While it might have been of aid to the jury if that fact had been proven, it was not essential. The plaintiff was a witness, and the jury had a right to, and doubtless did, determine his approximate age from his appearance while he was testifying. The age of a person is a fact that is commonly determined by inspection, and, in support of the judgment, we will presume that the jury determined the age of the plaintiff by that method.

■ 2. The expectancy of the life of the plaintiff was a fact for the jury, and the jury alone, to determine from the evidence and the appearance of the plaintiff. While mortality tables may be of some assistance to a jury in determining the expectancy of the life of a person, they are neither conclusive nor essential. They are simply one kind of evidence to be considered by the jury with the evidence showing the condition of the person's health, and any other circumstance having a legitimate bearing upon the question. *Fifield's Admx.* v. *Rochester,* 89 Vt. 329, 331, 95 Atl. 675, Ann. Cas. 1918A, 1016; *Illinois Central Ry. Co.* v. *Houchins,* 121 Ky. 526, 534, 89 S. W. 530, 1 L. R. A. (N. S.) 375, 123 A. S. R. 205; *Standard Oil Co.* v. *Reagan,* 15 Ga. App. 571, 591, 84 S. E. 69.

■ We do not consider the third question briefed by the defendant as it was not raised below. The court did not submit to the jury the question of "loss of wages because of future pain and suffering"; and the defendant did not except to the charge on future damages on the ground that there was no evidence as to what the plaintiff's commissions amounted to, outside of his salary.

There was no error in the trial below.

*Judgment affirmed.*