## Cumberland Telephone & Telegraph Company v. Laird.

(Decided December 18, 1914.)

Appeal from Nelson Circuit Court.

1. Telegraphs and Telephones—Submission to Jury.—Upon an issue whether it was the duty of a telephone company to maintain a telephone line at the point where an accident happened, the evidence is examined and held sufficient to justify the submission of that question to the jury.

2. Telegraphs and Telephones—Evidence.—Where in a personal injury action the real issue was not whether the defendant had been guilty of negligence, but whether the duty was imposed upon it of maintaining a telephone line at the point of the accident, evidence is permissible that after the accident employes of the company had worked on and repaired the line at that place.

3. Verdict.—Evidence of injuries examined and held that a verdict for $5,000 is not excessive.

4. Continuance—Evidence.—A defendant is not entitled to a continuance as a matter of right because of its failure to get the evidence, prior to the trial, of the plaintiff as if under cross-examination, where on the trial there was nothing in the evidence of the plaintiff which took the defendant by surprise or that it was not in every way ready to meet.

W. PRATT DALE, NAT W. HALSTEAD, BRUTUS J. CLAY and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

JOHN A. FULTON, GEORGE S. FULTON and FULTON & McGINNIS for appellee.

Opinion of the Court by Judge Turner—Affirming.

The L. & N. Railroad Company owns and operates a line of railroad from Louisville, Ky., to Bardstown. Appellee was a brakeman on one of its freight trains running on that line in September, 1912. About one mile west of Bardstown a spur track, owned by the L. & N. Company, runs from the main line to what is known as the Lancaster Distillery, a few hundred yards away.

Appellant operates a telephone system in Nelson County, with its principal exchange at Bardstown. Its lines radiate in all directions from that center, and, among others, is one going out the Bardstown and Louisville turnpike; about one mile north of Bardstown its said line makes a junction with a small neighborhood telephone line serving only three patrons, the Lancaster Distillery, one Elmer Grigsby, and the Clear Spring Distilling Company, which operates a plant about one mile west of the Lancaster Distillery. This neighborhood line was originally constructed a number of years ago from the Lancaster Distillery to the junction with appellant's line on the Bardstown turnpike at the joint expense of the Lancaster Distilling Company and the predecessors of the Clear Spring Distilling Company, and from the Lancaster Distilling Company's plant to the plant of the Clear Spring Distilling Company it was constructed wholly at the expense of the latter company's predecessors. The two wires, which continued to the Clear Spring Distilling Company from the Lancaster Company had been for a number of years attached, by consent or acquiescence of the Lancaster Company, to one of its warehouses on the east side of the spur track, and from that point across the said spur track they were attached to a post on the west side thereof, and thence proceeded to the Clear Spring Distilling Company. As originally constructed, these wires where they crossed the spur track were elevated at least 25 or 30 feet above the level of the track.

In the summer of 1912 the Lancaster Distilling Company tore down this warehouse to which these wires had been attached, and thereupon they sagged to such an extent as to hang only 5 or 6 feet above the level of the spur track. Attention being called to this condition, appellant's lineman undertook to remedy it, but did so in such manner as that the wires crossed the spur track at an elevation of about only 18 feet. With the lines in this condition a train, upon which appellee was brakeman,

went onto the spur track on the 24th day of September, 1912, and safely passed under it going in; but there was an empty box-car already on the spur track, and when this box-car was taken out, upon the return trip, appellee, in the exercise of his duty as a brakeman, climbed upon the top of it, and the telephone wire while the car was moving, caught him under the throat or around the neck and threw him to the ground, whereby he was severely injured, and from which this suit for damages resulted. He recovered a judgment for $5,000 in the lower court, and the telephone company has appealed.

Each of the three parties on this neighborhood line were directly connected with appellant's exchange at Bardstown, and had full communication, as did the other patrons, with the territory covered by it; each of them had a number assigned it in the published directory of appellant; each paid a fixed monthly rental, and this status had existed for several years.

The plaintiff in his petition does not allege that the Telephone Company owned this neighborhood line, but does allege that it operated it and that it was its duty to maintain it; the company's main defense being that it never owned or operated it, nor was it under any duty to maintain it.

Appellant insists that it was entitled to a peremptory instruction because of the failure of evidence to show that it maintained, or repaired, or controlled the telephone line at the point of the accident. The evidence of Grigsby, and Atherton, an employe of the Lancaster Distilling Company, was direct and positive to the effect that the appellant has repaired and maintained that part of the line running from the Bardstown pike to Grigsby's residence and the Lancaster Distillery; in fact there is no serious contention that it did not maintain and repair this line to those points, but, for some reason which is neither plain nor satisfactory, it is insisted that although it may have maintained and repaired that part of this line and may have assumed the control of it to those points, that it never assumed such control, maintained or repaired that part of the line beyond the Lancaster Distillery. Our understanding of the evidence is that the line was built all at the same time or practically so; that it was built by the same people, although paid for by one party in a larger proportion than the other because of its greater distance from the

main line, but that in fact it was one line. We confess our inability to see why appellant should keep up and maintain this line a part of the way for the benefit of a part of its patrons, and deny its duty to keep up and maintain the balance of the line for another of its patrons, similarly situated.

But in addition to this there is evidence in the record that appellant's employes had at different times inspected the line running from the Lancaster Distillery to the Clear Spring Distillery, had trimmed trees along that line so as they might not interfere with the transmission of messages, and it further appears from the evidence of the Clear Spring Distillery officials that it had not repaired and had not undertaken to repair anything on this line for a number of years, and that when repairs were needed or the line was in trouble the company sent out there and had it repaired. It is distinctly stated by Beam, Vice President of the Clear Springs Distilling Company, that upon one occasion, a few years before the accident, when there had been a heavy sleet which broke the wire, the company sent out there and had it repaired. Certainly the fact that this line was directly connected with appellant's exchange at Bardstown, that it charged the persons along the line monthly toll rates, when taken in connection with this evidence that it had for several years assumed to maintain the line, justified the submission of the case to the jury.

The plaintiff was permitted to prove that after the accident, employes of the Telephone Company had worked on this line and had, in fact, elevated the line across this spur track, and it is urgently insisted for the appellant that this was in contravention of the well-known rule in this State that evidence of precautions taken or repairs made after an accident is not admissible as evidence that the defendant was negligent. (L. & N. v. Stewart's Admr., 131 Ky., 674.) But in this case the evidence was not admitted for the purpose of showing negligence, because that issue was not really contested; but was admitted for the purpose alone of enlightening the jury upon the contention that appellant was under no obligations to maintain that line. The distinction has been taken by many text-writers; while they all recognize the rule excluding such evidence when offered to show negligence, they recognize its competency upon the issue of ownership or control. For instance, Watson on Damages and Personal Injuries, Section 643 says:

"Where there is a dispute as to the defendant's control or authority over the place where the accident happened, the latter's act after the accident may be admitted, not as bearing on the issue of negligence, but for the purpose of showing the exercise of authority or control over such place."

Thompson in his Commentaries on the Law of Negligence, Vol. 6, Section 7850, under the head of Evidence of Subsequent Repairs, says:

"Evidence that the town after the accident, removed the obstruction which produced it, though inadmissible on the question of negligence, is admissible to show that the town had authority to remove it before the accident."

Wigmore on Evidence, Vol. 1, Section 283, after a statement of the rule which excludes such evidence offered for the purpose of showing negligence, says:

"There may, of course, be other evidential purposes for which the acts in question may be relevant; in that event, they are to be received, subject to a caution restricting their use to the specific proper purpose. In particular, when the defendant's liability depends on whether a landlord or his tenant was in control of premises, or upon whether a municipal corporation was exercising authority over a highway, the acts of control of such a person are provable, and an act of repair done after the injury may chance to be such an act."

It results, therefore, that the lower court did not err in admitting this evidence on the issue of control.

The criticism of instruction No. 1 by counsel is not justified; it did not authorize a recovery, as counsel seems to think, if appellant operated and maintained *any portion* of the neighborhood telephone line; but, in express terms, authorized a recovery only in the event that the telephone wire was negligently suspended at a point at which appellant operated and undertook to maintain the same.

While the verdict is large, in the light of the testimony as to the injuries of appellee, we are not inclined to say it was excessive. As the result of the accident his right ankle is permanently enlarged, the foot was thrown outward, and the arch of the foot lowered so as that he is compelled to wear a shoe of special design to give support to it; since the accident he has suffered a reduction of about 20 pounds in weight, he is afflicted with persistent and painful headaches, and with abnormal and frequent evacuation of urine; an examination of his

urine since the accident shows sugar therein, and the specific gravity of his urine is higher than it ought to be, and these conditions were found by the physicians upon three separate examinations. It is true that he was in bed only sixteen days, and that something more than two months after his injury, on the 2nd of December, he returned to his work as a brakeman; but he states he was compelled to do so by his necessities, when he was really unable to do so.

Appellant insists that it was entitled to a continuance because of its inability to procure the evidence of Dr. Roberts, a Louisville physician, who had attended appellee during his illness after the accident. But it is apparent that it could not have been prejudicial, because four other physicians testified as to the injuries of appellee, including the physician who first reached him after the injury, and including one appointed by the court to examine him.

It is also claimed that it was entitled to a continuance because of its failure to get the evidence of appellee, as if under cross-examination, as provided by sub-section 8 of Section 606 of the Civil Code. A failure to procure the presence of appellee at the place designated by appellant to so take his deposition, grew out of the fact that he was running as a brakeman on the train and it was unable to get personal service upon him. Appellant's answer was not filed until the 27th day of May, and the effort to take his deposition in Louisville was made on Saturday, the 31st day of May, and the court convened on the following Monday. There is nothing in the record to show that anything in the testimony of the appellee on the trial took the appellant by surprise, or that it was not in every way ready to meet his testimony, in so far as it was able to do so. The case of Western Union Tel. Co. v. Williams, 129 Ky., 515, was where the plaintiff had refused to submit to the giving of his deposition as if by cross-examination, and on the trial he gave such testimony as was a surprise to the defendant, and which it claimed it could, if given time, refute; and under those circumstances this court said the continuance should have been granted.

The matter of granting a continuance is largely left to the discretion of the trial court, and we see nothing to indicate that that discretion was abused in this case.

Judgment affirmed.