STATE v. A. W. COBB.

(Filed 24 September, 1913.)

**1. Homicide—Murder—Evidence Sufficient.**

Evidence in this case is held sufficient for conviction of murder in the first degree for waylaying and killing the deceased with a pistol shot, at night, when he was going from his store to his home with a sum of money, accompanied by his son, which tends to show that the prisoner knew of the custom of the deceased, conspired with another to do the act, agreeing to use bicycles to keep from being trailed·by bloodhounds; that they borrowed bicycles and that the bicycle tracks leading from the place of the crime corresponded with the tires of the one borrowed by the prisoner; that the foot tracks at this place corresponded with the size and shape of the prisoner's shoes, and were successfully trailed by bloodhounds; that it was too dark for the son

S. *v.* COBB.

of the deceased to identify the prisoner at the time of the crime, but that the size of the prisoner was that of the murderer, and that the latter wore a cap, such as the prisoner usually wore.

2. Homicide—Murder—Admissions—Instructions—Appeal and Error.

Where one of two prisoners on trial for murder is released, his admissions cannot be held for error, on the ground of duress, on an appeal from the conviction of the other, as the objection was only competent against the one making it, and became irrelevant, upon the instruction of the trial judge that the admissions should not be considered by the jury against the other defendant.

3. Homicide — Murder—State's Witness—Custody—Accessory—Evidence—Instructions.

The mode of examination of witnesses is a matter within the sound discretion of the trial judge, and not reviewable on appeal, in the absence of a gross abuse thereof; and where one of two defendants being tried for murder has been used as a State's witness, and as to him a verdict of not guilty has been entered, it will not be held for error on appeal from conviction of the other that the trial judge, in the presence of the jury, and at the solicitor's request, ordered him taken into custody to be held for an indictment of accessory before and after the fact.

APPEAL by defendant from *Lane, J.,* at June Term, 1913, of HALIFAX.

The defendant Cobb and Henry Gurkins were jointly indicted and tried for the murder of Thomas Shaw. During the trial the State agreed to a verdict of not guilty as to Gurkins. The defendant Cobb was convicted of murder in the first degree and sentenced to death. The defendant appealed.

*Attorney-General Bickett and Assistant Attorney-General Calvert and E. L. Travis for the State.*
*R. C. Dunn, Joseph P. Pippen for defendant.*

BROWN, J. There are sixty exceptions in the case on appeal. We have examined each one of them and the entire record with that care which the importance of the case demands, but will not undertake to comment on them *seriatim,* as it would unduly lengthen this opinion, and would be threshing over again much "old straw."

The most important contention of defendant is that the court should have allowed his motion to nonsuit or direct a verdict of not guilty at conclusion of the evidence, upon the ground that the evidence is insufficient to convict.

The State's evidence tends to prove that the deceased was a merchant, living about 2 or 3 miles from Rosemary, and his store was situated about 100 yards from his dwelling. He was in the habit of closing the store about 10 o'clock at night on Saturdays, and carried the money with him from the store to the house. On the night of the homicide he left the store about 10 o'clock with his son, Shelton Shaw.

It was a dark night and they had just come out of the light of the store. When they reached the corner of the house porch a man, who was sitting on the ground, stood up and said, "Hands up!" The deceased ordered him to get away, and the man then shot.

The son of the deceased testified that he could not recognize the man, or tell whether it was a white or a black man, on account of the darkness of the night, but that he was wearing a cap and that he was of the height and size of the defendant. There was other testimony that the defendant usually wore a cap.

There is testimony tending directly to prove the conversation of Cobb and Gurkins, that they were planning to rob the deceased, and if necessary kill him; that they were to borrow bicycles so as to escape being trailed by hounds; that the agreement was made; and that Cobb said, "I will put a gun in his face, and we will get that kit. We will get on the bicycles and ride back to town. Damn sure thing, bloodhounds can't track a bicycle."

The deceased was shot and killed after this, on Saturday night, 3 May.

C. O. Byrd testified that on 2 May he saw Cobb sitting on the steps of the church, and that he engaged the witness in conversation. This witness testified: "He told me, 'I saw a thing that looked good to me out in the country yesterday, and all it takes is nerve, and what it takes to get it, I got it.' I said,

'Yes, and you will get got, too.' He said, 'Why, can't you get a job?' I said, 'Yes; I have several jobs here to finish, and cannot save any money in Norfolk.' He said, 'I am going Sunday morning, if things have come out as I have planned.' "

There is evidence that defendant borrowed two bicycles on the evening of the homicide, and that the bicycle track leading from the scene of homicide had eight ridges in the tires, corresponding exactly with the wheel defendant borrowed the same evening from Claude Taylor.

There was evidence of successful trailing with hounds and evidence that the shoe tracks leading from the scene of the homicide were carefully measured and corresponded exactly with those of defendant.

Then there is the evidence of Gurkins, and much circumstantial evidence tending strongly to establish defendant's guilt, which it is unnecessary to set out.

The whole evidence taken together well warranted his Honor in denying defendant's motion, and in submitting the question of his guilt to the jury.

A dozen exceptions were taken to the admission of the declarations of Gurkins. It is first contended that these were made while Gurkins was in custody, and under circumstances tending to show that Gurkins made them under duress.

This objection is open to Gurkins only, and cannot be made by this defendant. As Gurkins was acquitted, they are now irrelevant.

It is contended that these declarations were incompetent as against Cobb, and should have been excluded. They were admitted while Gurkins was on trial, and were competent as against him. His Honor very explicitly and repeatedly told the jury that Gurkins' declarations were competent against him only, and cautioned them not to let them weigh against Cobb.

We think his Honor's directions fully complied with the rulings of this Court. *S. v. Collins,* 121 N. C., 667; *S. v. Brite,* 73 N. C., 26.

Eight exceptions are taken to the mode of examination of witnesses, leading questions, etc. This is a matter within the sound

discretion of the trial court, and this Court will not review it except in cases of a very gross abuse of such discretion. *Bank v. Carr,* 130 N. C., 481; *Crenshaw v. Johnson,* 120 N. C., 271.

The defendant also complains that when the State rested its case, the solicitor, in the presence of the jury, requested the court to hold Henry Gurkins until the solicitor could send a bill charging him as accessory before and after the fact of the murder of Shaw.

This was asked after the State had entered a verdict of "not guilty" as to the defendant Gurkins, and had used him as a witness for the State. The request was granted, and the court ordered the sheriff to take Gurkins into custody. This exception is taken to the action of the court in allowing this to be done, and in ordering Gurkins into custody in the presence of the jury. The mode of conducting the trial is in the discretion of the trial judge, and the exercise of discretion is not reviewable unless it appears that there has been an abuse of the discretion. There is nothing in this record to show that there was an abuse of discretion or that the action of the court was prejudicial to the defendant. *S. v. Moore,* 104 N. C., 743.

It appears to us from an examination of the voluminous record in this case that the defendant has had a fair trial, and that he has no just reason to complain of the rulings or charge of the court.