E. R. HANCOCK, ADMINISTRATOR OF THE ESTATE OF LUTHER H. HANCOCK, v. K. L. WILSON AND ATLANTIC GREYHOUND LINES, INC.

(Filed 27 January, 1937.)

**1. Trial § 22—**

On a motion to nonsuit, all the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

**2. Automobiles § 18g—Evidence held for jury on issues of negligence and proximate cause.**

Testimony that a bus was being operated on the wrong side of the highway at an excessive speed, and that it struck the car driven by plaintiff's intestate as it was being driven in the opposite direction at a lawful speed on its right side of the highway, *is held* sufficient to be submitted to the jury on the issues of negligence in the operation of the bus and proximate cause, and the fact that defendants introduced evidence in contradiction of plaintiff's evidence is immaterial on the question of the sufficiency of the evidence to overrule defendants' motions to nonsuit.

**3. Trial § 23—**

Where plaintiff's evidence is sufficient to be submitted to the jury, the fact that plaintiff's evidence is contradicted by evidence introduced by defendants does not entitle defendants to nonsuit, it being for the jury to determine which evidence they will believe.

**4. Trial § 19—**

The competency, admissibility, and sufficiency of the evidence is a matter for the court, its credibility, probative force, and weight is for the jury.

5—211

**5. Appeal and Error § 25—**

A contention of error in the charge will be deemed abandoned when the portion of the charge complained of is not assigned as error.   Rule 19 (3).

**6. Automobiles § 11—Instruction in regard to passing vehicles on highway held without error.**

The charge of the court that drivers of cars going in opposite directions and passing on the highway should each turn to the right and give to the other one-half the main traveled portion of the roadway, and that upon approaching each other each may assume that, before the cars meet, the driver of the other car will turn to his right so that the cars may pass in safety *is held* without error.   N. C. Code, 2621 (53).

**7. Trial § 32—**

A party desiring elaboration on a subordinate feature of the charge must aptly tender a proper prayer for instructions.

**8. Death § 8—Charge held to have sufficiently instructed jury that mortuary table was merely evidential and that jury was not bound thereby.**

The court instructed the jury in regard to the statutory mortuary table, that the table was based upon the experience of insurance companies, that under the statutory table a normal man of intestate's age would have a life expectancy of a stated number of years, that the jury could consider the table in making its verdict, but that the jury was not bound by it, and that the jury should consider not only the table, but the health, habits, and character of intestate.   *Held:* The charge is not subject to the objection that it made the statutory mortuary table binding upon the jury in determining intestate's life expectancy.   C. S., 1790.

**9. Same—Charge held not to have instructed the jury to consider intestate's family in determining the amount of damages.**

The court instructed the jury to consider intestate's age, strength, health, skill, industry, habits, and character to the end that they might determine his pecuniary worth to his family, how much net income might be reasonably expected, that the jury should rid itself of prejudice, if any, that the matter of damages was a practical question and not a question of sympathy, and that defendants contended that intestate made only enough for his living expenses, and that consequently there would be no net income.   *Held:* The charge that the jury should determine intestate's pecuniary worth to his family is not objectionable, when read in connection with other portions of the charge, as allowing the jury to consider intestate's family in determining the amount of damages.   *Kesler v. Smith,* 66 N. C., 154, cited and distinguished for that evidence of the number of intestate's children was admitted in that case.

**10. Trial § 36—**

A charge will be read contextually as a whole, and exceptions thereto will not be sustained when the charge, so construed, is not prejudicial.

APPEAL by defendants from *Grady, J.,* and a jury, at February Term, 1936, of CASWELL.   No error.

This is an action for actionable negligence, brought by plaintiff against defendants for damages.

The plaintiff, among other things, made the following allegations in his complaint:

"That the defendant, K. L. Wilson, was, at the time of the injury hereinafter complained of, an employee and agent of the defendant Atlantic Greyhound Lines, and was employed as a bus driver.

"That on the night of September 6, 1935, about midnight, the plaintiff's intestate, Luther H. Hancock, together with three other persons, was driving a Chrysler sedan on Federal Highway No. 29, traveling in a southern direction toward Pelham, North Carolina; and while operating the said car in a careful, prudent, and lawful manner, as he reached a slight grade in the said highway, at a point near Pelham, North Carolina, the defendant K. L. Wilson, agent and employee of the defendant Atlantic Greyhound Lines, and while acting within the scope of his employment and while acting as the servant and agent of the defendant Atlantic Greyhound Lines, approached from the opposite direction, operating an Atlantic Greyhound bus, the property of the defendant Atlantic Greyhound Lines, at a terrific rate of speed and in a careless and reckless manner, proceeded, while operating the said bus on the left hand side of the said highway and in violation of law, carelessly and negligently struck the car of the plaintiff's intestate, almost completely demolishing the said Chrysler sedan and causing it to catch fire immediately, inflicting the injury to the plaintiff's intestate as hereinafter set out; that the bus continued on the left hand side of the road, after striking the car of the plaintiff's intestate, for a distance of approximately two hundred feet; that, at the time of the collision, the car of the plaintiff's intestate was entirely on the right side of the highway proceeding south in the direction of Greensboro.

"That, in the collision, the plaintiff's intestate, Luther H. Hancock, was either killed from the collision or burned to death as a result of the said collision.

"That the defendants were greatly negligent on the said occasion in the following particulars:

"In that they were operating the said Greyhound bus in a careless and reckless manner without due regard for the traffic conditions and the condition of the highway, and in utter disregard of the safety of others, and especially the plaintiff's intestate; and that the driver of the said bus failed to keep a proper lookout and failed to keep his bus under control, and that he failed to operate the car with the care and prudence necessary under the circumstances.

"In that they were operating the said Greyhound bus at an excessive rate of speed, greater than that allowed by law.

"In that they were operating the Greyhound bus on the left side of the highway and in violation of law.

"That the negligence of the defendants on the said occasion was the proximate cause of the death of the plaintiff's intestate, Luther H. Hancock, deceased.

"That, at the time of the injury causing the death of the plaintiff's intestate, he was 29 years of age, in perfect health, and was earning an average of twenty-five dollars per week; that he was an industrious, hard-working young man of good, steady habits.

"That, on account of the negligence of the defendants, the plaintiff has sustained damages in the sum of Twenty-five Thousand Dollars."

The defendants in their answer denied the material allegations of the complaint, and set up certain statutes in reference to the law of the road that plaintiff's intestate was violating when the collision occurred, and also set up contributory negligence, alleging "that the collision was caused by no fault or negligence on the part of the defendants or either of them, but was due to and proximately arose on account of the careless and negligent conduct of the plaintiff's intestate, Luther H. Hancock, the driver of the Washington taxicab," etc.

The issues submitted to the jury and the answers thereto were as follows:

"1. Was Luther H. Hancock killed by the negligence of the defendants, as alleged in the complaint?  Answer: 'Yes.'

"2. If so, was said Luther H. Hancock also guilty of negligence, which contributed to his death, as alleged in the answer?  Answer: 'No.'

"3. What damages, if anything, is the plaintiff entitled to recover of defendants because of the death of said Luther H. Hancock?  Answer: '$5,000.' "

The court below rendered judgment on the verdict.  The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court.  The material ones will be considered in the opinion.

*Wm. E. Comer, W. B. Horton, and Carlton & Upchurch for plaintiff.*
*Hutchins & Parker for defendants.*

CLARKSON, J.  At the close of plaintiff's evidence, and at the close of all the evidence, the defendants made motions in the court below for judgment as in case of nonsuit.  C. S., 567.  The court below overruled these motions, and in this we can see no error.

On a motion to nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom.

The evidence of plaintiff fully sustained the allegations in the complaint.  The testimony of J. O. Franklin, witness for plaintiff, was to

the effect that Luther H. Hancock, plaintiff's intestate, was a taxicab driver in Washington, D. C., and drove a Diamond taxicab; that he was employed to drive his father, W. L. Franklin, and others to Gastonia, N. C., and they left Danville about 12 :00 o'clock at midnight on Thursday, September 5, 1935. He testified in part as follows: "We were going toward Greensboro from Danville. The roads were a little slick; it was drizzling rain. We had an accident or a collision. We were going up this hill, and a bus was coming over the hill between Pelham and Ruffin. I think the highway is pretty straight there. Way down below this hill is a curve. I was riding in the front seat of the taxicab with the driver. I saw this Greyhound bus coming over the hill. *This bus was on the left-hand side of the road going north when it came over the hill on our side of the road, the right side going south; the Greyhound bus was on its left-hand side. Prior to the time we approached where I saw the bus we were on the right-hand side of the road going south in the direction of Greensboro. The bus was going north. This bus came over the hill and on the left-hand side of the road going north, and we ran a little off the road to the right to try to get out of the way and the bus crashed into us, and that is all I remember. I was unconscious twelve hours after that. I think this bus was making at least 50 or 55 miles an hour.* The speed of the taxicab in which I was riding was twenty-five or thirty miles an hour. We were going up hill. The collision occurred about 12 :30. . . . I thought the bus was about ten feet from the car in which I was riding at the time I saw it approach. The highway north of the point of the collision is a grade. There is a curve at the bottom of the hill. At the point of the collision the road was straight. The occupants of the car I was in are all dead now. . . . At the time of the collision the Greyhound bus was on the left-hand side going north. We were on the right-hand side going south."

The taxicab caught on fire and the driver and another were burned to death.

The defendants in their brief say: "Nothing else appearing, we realize that this testimony is some evidence of negligence on the part of the defendants, but we think that something else does appear." This is the contradictory evidence on the part of the defendants. It is a matter long settled in this jurisdiction that the evidence is for the jury to determine.

The competency, admissibility, and sufficiency of the evidence is a matter for the court to determine. The credibility, probative force, and weight is a matter for the jury.

In *Smith v. Coach Line,* 191 N. C., 589 (591), *Brogden, J.,* speaking for the Court, says: "In *Shell v. Roseman,* 155 N. C., 90, this Court has

held that conflicting statements of a witness in regard to or concerning a material or vital fact does not warrant a withdrawal of the case from the jury. It affects only the credibility of the witness, and therefore, where inconsistent and conflicting statements are made by a witness or a party, the judge has no power to determine which is correct. This function belongs exclusively to the jury. To the same effect is *Christman v. Hilliard,* 167 N. C., p. 5, where plaintiff testified on direct examination that he could not state whether the land in controversy was embraced in the deed or not. Thereafter, on cross-examination, he testified that the land was embraced in the deed. The trial judge thereupon nonsuited the plaintiff, and under the principles of law heretofore established by the Court, the nonsuit was held to be error," citing authorities.

The defendants contend that the court below instructed the jury that speed in excess of 45 miles an hour on a highway was negligence *per se,* when the act says that it is only *prima facie* evidence of negligence. N. C. Code, 1935 (Michie), sec. 2621(46), Public Laws of 1935, chap. 311, sec. 4(c); *Exum v. Baumrind,* 210 N. C., 650.

On appeal to this Court by defendants in their "assignments of error" this charge is not complained of, and therefore "will be deemed to be abandoned." 200 N. C., Rule 19(3): "All exceptions relied on shall be grouped and separately numbered immediately before or after the signature to the case on appeal. Exceptions not thus set out will be deemed to be abandoned," etc.

We think the court below fully complied with the law by reading the statutes applicable to the facts in the case, viz.: N. C. Code, 1935 (Michie) sections 2621(45); 2621(46); 2621(51); 2621(53); the last mostly applicable to the facts in this case being as follows: "Drivers of vehicles, proceeding in the opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible. (1927, chap. 148, sec. 11.) When the driver of one of the automobiles is not observing the rule of this section, as the automobiles approach each other, the other may assume that before the automobiles meet, the driver of the approaching automobile will turn to his right, so that the two automobiles may pass each other in safety." *Shirley v. Ayers,* 201 N. C., 51, 53. See, also, *James v. Carolina Coach Co.,* 207 N. C., 742.

If defendants wanted a more elaborate charge, they should have requested same by proper prayer for instructions.

It is contended by the defendants that the court erred in instructing the jury with reference to the mortality table. The clause complained of is as follows: "In other words, gentlemen, under the statute, a normal ordinary man of the age of Luther H. Hancock would have continued to

live, without accident, for thirty-six years." But the full charge is as follows: "We have in the law books of this State a statute and in that statute is a table which we call the table of mortality. This table, gentlemen, is based upon the experience of the large insurance companies, the life insurance companies. They will go back for years and years and take all of the people who have held policies and they will ascertain what the age of each one of those persons was, and how long they lived. And then they will make a calculation upon these facts as to what is the probable length of life of a man of any given age. The statute to which I have just referred, gentlemen, puts the expectancy of Luther H. Hancock at thirty-six years. In other words, gentlemen, under the statute a normal, ordinary man of the age of Luther H. Hancock would have continued to live, without accident, for 36 years.

"You have the right to consider that statute, gentlemen, in making up your verdict, but you are not bound by it. You have the right to consider not only the statute, but the habits, the character of the man who died. The plaintiff contends, gentlemen, that you ought to find as a fact that he was a strong, healthy young man, that he was a man of good habits, that he was at that time making around $25.00 per week, or something over $100.00 per month," etc.

In *Taylor v. Construction Co.,* 193 N. C., 775 (779), *Brogden, J.,* speaking for the Court, said: "In the language of *Hoke, J.,* in *Sledge v. Lumber Co.,* 140 N. C., 459: 'The error here consists in making the mortuary tables conclusive as to the plaintiff's expectancy; whereas, by the very language of the statute, they are only evidential to be considered with all other testimony relevant to the issue.' *Speight v. R. R.,* 161 N. C., 80; *Odom v. Lumber Co.,* 173 N. C., 134." *Hubbard v. R. R.,* 203 N. C., 675 (683); *Trust Co. v. Greyhound Lines,* 210 N. C., 293.

N. C. Code, 1935 (Michie, sec. 1790), is as follows: "Mortuary tables as evidence: Whenever it is necessary to establish the expectancy of continued life of any person from any period of such person's life, whether he be living at the time or not, the table hereto appended shall be received in all courts and by all persons having power to determine litigation, as evidence, with other evidence as to the health, constitution, and habits of such person, of such expectancy represented by the figures in the columns headed by the words, 'completed age' and 'expectation,' respectively," etc.

We think that taking the charge as a whole, the court below merely explained the statute, that the jury could consider the statute but are not bound by it. We think the statute was complied with.

The court below charged the jury, in part, as follows: "As a basis on which to enable you gentlemen to make this estimate, it is competent for

the plaintiff to show, and for you to consider, the age of the dead man, Luther H. Hancock. It is competent for you to consider his prospects of life, his habits, his character, his industry, and skill, the means he had for making money, the business in which he was employed, the end of it all, gentlemen, being to enable you to fix upon the net income which might be reasonably expected, if death had not ensued, and thus arrive at the pecuniary worth of the deceased to his family."

The defendants contend that this was error. In *Kesler v. Smith,* 66 N. C., 154 (159), *Reade, J.,* lays down the rule as follows: "It was competent to inquire into his age, his strength, his health, his skill and industry, his habits, and his character, the end of all being to get at his pecuniary worth to his family—how much net income might be reasonably expected."

In that case a new trial was granted on the ground that evidence was admitted to prove the number in the family of deceased. This was held error, as the necessities of the family and not the value of the life would constitute the rule.

In *Hicks v. Love,* 201 N. C., 773 (776-7), is the following: "The appellant excepted to evidence offered by the plaintiff that the deceased provided for his family, that he had a comfortable home, a 200-acre farm, and a plenty for his family to eat and wear.

"In determining the pecuniary advantage to be derived from the continuance of a human life, it is competent for the jury in an action for wrongful death under C. S., 160, to consider evidence as to the age, habits, industry, skill, means, and business of the deceased. *Burton v. R. R.,* 82 N. C., 505; *Carter v. R. R.,* 139 N. C., 499; *Carpenter v. Power Co.,* 191 N. C., 130.

"A part of this evidence has reference to the industry of the deceased and to the business in which he was engaged, and is clearly within the scope of the cases just cited; and we see no convincing reason for holding that the result of his toil as manifested in providing for the support of his family should not be considered as evidence of his constant attention to business. Certainly the admission of the evidence is not adequate cause for a new trial. 17 C. J., 1356, sec. 244(3). We are referred by the appellant to *Kesler v. Smith,* 66 N. C., 154; but a careful perusal of the case will show that the evidence held to be incompetent was, in the first place, proof of the number in the family of the deceased at the time of his death, the proposed argument being that the number in the family ought to affect the damages; and, in the next place, proof that the deceased 'was often engaged in fighting' and 'was often indicted,' which was offered in answer to the plaintiff's evidence that the deceased 'furnished supplies to his family and was seen carrying them provisions.' The case, therefore, is not in conflict with the conclusion above stated." *Hines v. Foundation Co.,* 196 N. C., 322 (323-4).

Further, the court below charged the jury: "It will be your duty, gentlemen, in arriving at a verdict upon this, or any other issue, to rid yourselves of any prejudices, if you possibly have any, to rid yourselves of any sympathy which you may possibly have. It is not a question of sympathy. It is just a plain, practical question, and you should give a reasonable and fair verdict upon all of the issues, according to the evidence in this case, gentlemen."

Further, we find that the court below said in regard to damage: "The defendant in this case contends, gentlemen, that an income of $25.00 per week in the city of Washington, that there would have been no net income. The defendant contends that you gentlemen ought to know as a matter of common knowledge and common sense that a person can hardly live in Washington City for $25.00 a week, and that in this case that there would have been no net income, and that the damage in this case can only be nominal. . . . That there would have been no net income, or, if any, that it would have been very small, taking into consideration the amount of his gross income."

Taking the charge as a whole, we see no ground for a new trial.

The many exceptions and assignments of error made by the defendants as to the expression of opinion by the court below, the admission and exclusion of evidence, and as to the measure of damages are without merit and not prejudicial. The defendants contend that the court below erred in failing to review the evidence and declare the law arising therefrom, and impinged C. S., 564. We cannot so hold. Taking the charge as a whole, the able and learned judge in the court below reviewed the evidence, gave the contentions fairly, and charged the law applicable to the facts. We can see no prejudicial or reversible error on the record. The matter was mainly one of fact for the jury to decide. Under the evidence they could have decided either way, but rendered verdict for the plaintiff.

In law, we find

No error.