BLANCHE IVEY LUCAS v. CLIFFORD LESLIE WHITE AND WIFE, MARION
D. WHITE; LAWRENCE A. FREEMAN AND JESSE H. DUNSCOMB.

(Filed 19 March, 1958)

**1. Pleadings § 24:　Trial § 23f—**

Plaintiff must make out his cause according to the allegations of the
complaint, and a fatal variance between the allegation and proof com-
pels nonsuit.

**2. Automobiles § 15—**

A motorist driving on his right side of the highway may assume that
vehicles approaching from the opposite direction will observe' the rules
of the road and remain on their right side of the center line, and while
the right to rely upon such assumption is not absolute, it does obtain
unless there is something to put him on notice that the driver of an
approaching car is in a helpless condition or for some cause will not re-
main on his right side of the highway.

**3. Automobiles § 41c—　Allegations and evidence held not to disclose
anything to put driver on notice that approaching car would not re-
main on its side of the highway.**

Plaintiff's allegation and evidence were to the effect that she was
riding as a passenger in a car driven by the appealing defendant on its
right side of the highway, and that a car approaching from the opposite
direction suddenly swerved to its left over the center of the highway
and collided with the car in which plaintiff was riding. There was evi-
dence that the approaching car had been wobbling from one side of the
highway to the other prior to the collision, but plaintiff's allegations were
to the effect that it had proceeded in an unswerving line in its lane
of travel until halted by the collision. *Held:* Disregarding the evi-
dence at variance with the allegations, there was no evidence of any-
thing to put the defendant on notice that the driver of the other car
would not observe the rules of the road until it was *too late for* defen-
dant to have avoided the collision, and nonsuit was proper.

**4. Automobiles § 40:　Evidence § 42a—**

A statement by defendant driver to plaintiff upon his visit to her in
the hospital after the accident that "he felt like it was partly his fault,"
*is held* a legal conclusion, determinable alone by the facts.

APPEAL by plaintiff from *Moore (Clifton L.) J.*, at September 1957
Term, of NEW HANOVER.

Civil action to recover for personal injuries sustained by plaintiff
as result of alleged actionable negligence of defendant Jesse H. Duns-
comb,—who is the only defendant in court.

The record of case on appeal discloses without controversy that

a collision occurred about 2:16 A.M., on September 4, 1955, between an automobile operated by defendant Dunscomb, in which plaintiff was riding, and traveling south along S. Front Street, in the city of Wilmington, North Carolina, and an automobile operated by one Freeman, alleged to be an agent of defendants White, hereinafter referred to mainly as the White car or vehicle, and occasionally as the Freeman car or vehicle, traveling north along said S. Front Street.

Upon trial in Superior Court plaintiff, Blanche Ivey Lucas, testified in pertinent part as follows: " * * * Jesse Dunscomb * * * had a blue Oldsmobile convertible * * * We were driving south on South Front Street, and I looked up and saw this car wobbling meeting us, as I saw the lights. It was raining some but not as much as it had been, and the street was wet from the rain. The vehicle approaching us was going north and the lights were wobbling, or weaving. I noticed it wobbling or weaving by the lights * * * The approaching vehicle was about 275 feet from our car when I first noticed it wobbling. I was sitting on the front seat of our car. When I noticed that, I moved up on the edge of the seat so I could see it clearly, and as it got closer, about 100 feet closer, I looked at Jesse and said 'Look out'. When the approaching car was 100 feet from us it was wobbling across the line, and I saw he would hit us if something was not done. I turned to Jesse and said 'Look out, Jesse', and I turned around and by the time I turned around my head went in the windshield. I was looking at Dunscomb when I told him to look out, and he did not respond or answer. He was looking straight ahead * * * he did not put on his brakes. The brakes were not applied at all on his car before the collision. He did not turn his vehicle to the right to avoid striking this other car coming down on his side of the road; if he had, he would have had plenty of room to get off on the shoulder. He was driving right close to the white line. There were no cars parked on the right-hand side of the road along there. There were no obstructions up ahead that would prevent Mr. Dunscomb from seeing the other vehicle approaching. I saw it clearly. Mr. Dunscomb did not blow his horn at any time. There were no cars coming on our right-hand side of the road right opposite us. He did not turn to either direction to avoid a collision.

"Our car was going about 30 miles an hour. He did not slacken speed. In my opinion, the approaching car was going about 45 miles an hour. When the two cars collided my head went in the windshield and it knocked me backwards and my head was cut open * * * I was carried to the hospital.

"Mr. Dunscomb, the defendant, visited me about 10 o'clock the Sunday morning after the accident. I was in my room in the hospital. Mr. Dunscomb told me he was sorry it had to happen, and he almost

rather it was him than me, and that he felt like it was partly his fault. My brother was in the room * * * and he heard the conversation between us."

Then on cross-examination plaintiff continued: "I alleged, 'Despite the fact that he saw or by the exercise of due care and diligence should have seen the approach of the said Dunscomb vehicle on the said wet street, that operator of said White vehicle continued to drive said White vehicle northwardly at an unabated speed of 35 miles per hour or more.' In article 22 of this amended complaint, I allege as follows: 'Until its forward progress was halted or changed by collision with the said Dunscomb vehicle the *said White vehicle proceeded northwardly at an unabated speed in an unswerving line of travel in the said southbound traffic lane of the said highway.'* (Emphasis supplied) That is my signature to the original complaint * * * That is my signature on the amended complaint. We were in the southbound traffic lane on the right side of the road, and they crossed over the white line. When I first saw the White vehicle * * * it was wobbling. When it turned into our lane it was not running in a straight line. In the complaint I swore it was traveling in a straight line or it would have hit us directly in front; it had to come in some to get us.

"I do not know how many feet a car will travel in a second when it is running 35 miles per hour. In my direct examination, I said it was running around 45, I guess. He started across the white line into our line when he was about 100 feet away. I said Mr. Dunscomb's car was going around 30 miles an hour. He was in a 35 mile travel zone. I did not see anything on the left as these cars were meeting to prevent that approaching car from turning back into his northbound lane if he had wanted to. There was no car traveling on our left side, or right side, at that time. We had passed the intersection of Alabama Street. I don't remember a place marked off for cars to pass on the west side of the street. I don't remember a house there with a concrete wall or coping by the edge of the street. I had known Sgt. Dunscomb for a year and had been going with him for some time. After the wreck we did not go together very long."

C. E. Mason, of police department of city of Wilmington, as witness for plaintiff, testified in pertinent part: " * * * On the night in question I was called to South Front Street where an accident had taken place * * * Mrs. Lucas was still in Dunscomb's car when we got there * * * The Dunscomb car was within his right lane on the road that night. I would say it was a foot and a half or two feet from the white line. The other vehicle was all in the south-going lane except possibly the right rear wheel, which was on the line * * * There is a lane for parked cars on each side of the road. When I arrived at the scene * * * I do not recall there being any parked cars on the

,right-hand side of the road. * * * The accident happened north of the intersection of Alabama Avenue."

And this witness testified that " * * * the White car was in contact with the Dunscomb car on the left of the Dunscomb car and more to the left of the White car then to the right of it."

Defendant Dunscomb, reserving exception to denial of his motion for judgment as of nonsuit, entered when plaintiff first rested her case, as witness for himself, testified: "* * * The night of September 4, 1955, I was driving south on South Front Street, and it was raining, and this other automobile was traveling north on South Front Street in a normal manner. It was going straight down the north side of the road. I was on the right side of the road. The other car was traveling to my left. I was driving and this other automobile within a few feet suddenly swerved into my lane of traffic * * * there was no time for me to do anything. I noticed it was in my lane of traffic and at the same time the accident happened, I was in the process of putting on my brakes when the accident happened. I attempted to turn to the right at the same time. Mrs. Lucas was riding in the car with me. The left front end of the oncoming car struck the left front of my automobile. I was traveling about 30 miles an hour. My lights were burning and visible. I went to see Mrs. Lucas in the hospital, but do not recall making a statement to her that I felt it was partly my fault. Mrs. Lucas did not claim to me that it was my fault * * *."

Then on cross-examination, defendant Dunscomb continued: "I can't say the exact distance the Freeman car was from my car the time I first saw it, possibly 400 or 500 feet, maybe more. I observed nothing unusual about its approach. I had it in my view all the time. There was nothing whatever peculiar or unusual about its approach until it suddenly swerved into my lane of traffic. It swerved into my car. (Witness then read paragraph 22 of the answer, admitting the allegations of paragraph 22 of the complaint). Then continuing, the witness said: "It (the oncoming car) didn't wobble. It was not running straight down the southbound lane * * * It turned suddenly into the southbound lane of traffic when it was approximately 100 feet away. From that point it proceeded in an unswerving line directly down the southbound lane. At the time I knew there was going to be an accident, I attempted to turn and put on brakes, but at that time the accident happened."

And, continuing, the witness further stated: "I recall Mrs. Lucas saying 'Look out, Jesse', she had no sooner got the words said than the collision happened. We noticed it in my lane at the same time she said, 'Look out, Jesse.' I don't recall making any statement to her, or in her presence, or in the presence of her brother, of it being partly my fault. There was no way for the accident to be my fault

* * * I deny making such statement * * * My automobile must have been a couple of feet to the right of the white line at the time of the collision * * * as close as I can remember the White vehicle was entirely on my lane at the point of the collision * * *."

Defendant then offered without objection paragraphs (or articles) 20, 21, 22, 23, 25, 28, and 19 of the amended complaint.

At the close of all the evidence motion of answering defendant for judgment as of nonsuit was allowed, and from judgment entered in accordance therewith plaintiff appeals to Supreme Court, and assigns error.

*Lonnie B. Williams, Otto K. Pridgen, II, Clayton C. Holmes for Plaintiff Appellant.*
*Isaac C. Wright for Defendant Appellee*

WINBORNE, C. J.: Appellant states this as the question involved on this appeal: "Is nonsuit proper where evidence tends to show that defendant observed or should have observed an approaching vehicle weaving across the road and in the left-hand lane and made no effort to avoid the collision although he could have done so?" In the light of the allegations of the complaint, paragraph 22, the answer is Yes.

Plaintiff must make out her case according to her allegations, that is, *secundum allegata.* The court cannot take notice of any proof unless there is a corresponding allegation. And where there is a material variance between the allegation and proof, such defect may be taken advantage of by motion for judgment as of nonsuit. *Brady v. Beverage Co.,* 242 N.C. 32, 86 S.E. 2d 901, citing *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14. *Wilkins v. Finance Co.,* 237 N.C. 396, 75 S.E. 2d 118; *Lyda v. Marion,* 239 N.C. 265, 79 S.E. 2d 726; *Andrews v. Bruton,* 242 N.C. 93, 86 S.E. 2d 786, and numerous other cases cited therein and annotated thereon.

Applying this principle to the evidence shown in the record, and eliminating the evidence at variance with the allegation, there is no evidence of negligence by defendant as a proximate cause of the injury of which complaint is made.

In this connection it is provided by statute, G.S. 20-148, that "drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible." *Hoke v. Greyhound Corp.,* 226 N.C. 692, 40 S.E. 2d 345.

The plaintiff's allegation and evidence tends to show that defendant was driving on his right side of the highway, at a lawful and moderate rate of speed, thirty miles per hour in a thirty-five mile zone, had the car under control, and, as in *Morgan v. Saunders,* 236

N.C. 162, 72 S.E. 2d 411, after his car was struck by the White car, it still remained on the right side of the highway near the center line.

Indeed, this Court has declared in many cases "that the driver of an automobile who is himself observing the law (GS 20-148) in meeting and passing an automobile proceeding in the opposite direction has the right ordinarily to assume that the driver of the approaching automobile will also observe the rule and avoid a collision." So wrote Devin, C. J., in *Morgan v. Saunders, supra,* citing *Shirley v. Ayers,* 201 N.C. 51, 158 S.E. 840; *James v. Coach Co.,* 207 N.C. 742, 178 S.E. 607; *Hancock v. Wilson,* 211 N.C. 129, 189 S.E. 631; *Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707; *Brown v. Products Co., Inc.,* 222 N.C. 626, 24 S.E. 2d 334; *Hoke v. Greyhound Corp.,* 227 N.C. 412, 42 S.E. 2d 593.

While the right of a motorist to assume that a driver of a vehicle coming from the opposite direction will obey the law and yield one-half the highway, or turn out in time to avoid collision, and to act on such assumption in determining the manner of using the road is not absolute, there is nothing in the record on this appeal to show, or to put defendant on notice, that the driver of the White car was in a helpless condition or from any cause unable to turn his automobile to the right of the center of the road in passing the Dunscomb car.

Lastly, in respect to the alleged remark made by defendant to plaintiff, at the hospital, which he denies, "that he felt like it was partly his fault," we find it said in *Austin v. Overton,* 222 N.C. 89, 21 S.E. 2d 887, opinion by *Stacy, C. J.,* speaking of a similar remark in that case, "Even so, the conclusion is a legal one, determinable alone by the facts."

In accordance therewith the statement if so made by defendant to plaintiff in hospital in the instant case is not sufficient, standing alone, to make out a case for the jury.

Hence the judgment as of nonsuit is

Affirmed.