EDNA LAMM v. JOHN S. GARDNER, ADMINISTRATOR OF BERYL J. FORD AND MRS. THELMA GRANTHAM.

(Filed 12 June, 1959.)

**1. Automobiles § 40: Evidence § 11—**

In an action by a passenger in a car against the driver thereof and the administrator of the driver of the other car involved in the collision, testimony of a declaration of plaintiff to the effect that she saw the other car zigzagging across the road is competent as against the driver of the car in which she was riding in support of plaintiff's contentions that such driver failed to take proper precautions to avoid collision in the emergency, although as against the administrator it is incompetent under G.S. 8-51.

**2. Trial § 17—**

Testimony which is competent as against one party should not be excluded because it is incompetent as against another party, but its admission should be limited by proper instructions.

**3. Automobiles § 38: Evidence § 35—**

Testimony of a declaration of plaintiff passenger to the effect that the collision would not have occurred if the driver of the car in which she was riding had stopped the vehicle is incompetent as a mere opinion or conclusion.

**4. Automobiles § 7—**

The driver of a motor vehicle is at all times under duty to operate the vehicle with due caution and circumspection and at a speed or in a manner so as not to endanger or to be likely to endanger any person or property, which statutory standard of car is absolute. G.S. 20-140.

**5. Automobiles § 25—**

Notwithstanding that the speed is within the statutory maximum, the operator of a motor vehicle is required to decrease speed as may be necessary to avoid collision with any person or vehicle when special hazards exist by reason of the width or condition of the highway or the exigencies of traffic, which statutory requirement is absolute. G.S. 20-141.

**6. Automobiles § 7—**

It is the duty of a driver of a motor vehicle not only to look but to keep a lookout in the direction of travel, and he is held to the duty of seeing what he ought to see.

**7. Automobiles § 15—**

Where a motorist sees, or in the exercise of ordinary care should see a highway sign warning that she was approaching a narrow bridge, and sees, or in the exercise of ordinary care should see, that a vehicle approaching from the opposite direction was zigzagging across the highway, she is under duty to take such action as a reasonably prudent person would take under the circumstances by decreasing speed and having her vehicle under proper control so as to avoid colliding with the approaching vehicle on the highway or on the bridge.

**8. Same—**

The right of a motorist, who is himself observing the law, to assume that the driver of a vehicle approaching from the opposite direction will remain on his right side of the highway, is not absolute, and when he sees, or should see, in the exercise of due care, that the approaching vehicle was zigzagging across the highway, he may no longer rely upon the assumption.

**9. Automobiles § 19—**

A motorist confronted with a sudden emergency created by an approaching vehicle zigzagging across the highway is not held by the law to the wisest choice of conduct but is required to make such choice as a person of ordinary care and prudence, similarly situated, would have made.

**10. Negligence § 5—**

There can be more than one proximate cause of injury.

**11. Negligence § 7—**

Negligence of one party cannot be insulated by the negligence of another so long as the negligence of the first continues to be a proximate cause of the injury.

**12. Automobiles § 43— Evidence held not to justify nonsuit on ground of intervening negligence.**

Plaintiff's evidence was to the effect that the driver of the car in which she was riding saw, or in the exercise of due care should have seen, as she approached a long, narrow bridge, a vehicle approaching from the opposite direction which was zigzagging across the highway, and that the driver of the car in which plaintiff was riding, although she kept her car on the right side of the highway at all times within the statutory maximum speed, increased her speed and collided with the other car on the bridge after the other car had struck the side of the bridge on his right and then careened into the path of the car in which plaintiff was riding. *Held*: The evidence was sufficient to be submitted to the jury on the question of whether the driver of the car in which plaintiff was riding acted as a reasonably prudent person would have acted in the light of all the surrounding facts and circumstances, and does not warrant nonsuit on the ground of intervening negligence.

BOBBITT, J., dissenting.

HIGGINS, J., concurs in the dissent.

APPEAL by plaintiff from *Hobgood, J.,* January Civil Term 1959, of ROBESON.

Civil action to recover damages for personal injuries allegedly caused by the actionable negligence of the defendants.

At the close of plaintiff's evidence, each defendant moved for a judgment of involuntary nonsuit. The motion of the defendant Gardner was denied. The motion of the defendant Grantham was granted.

Whereupon, plaintiff took a voluntary nonsuit as to the defendant Gardner.

From the judgment of involuntary nonsuit as to the defendant Grantham, plaintiff appeals.

*Varser, McIntyre, Henry & Hedgpeth and Battle, Winslow & Merrell for plaintiff, appellant.*

*Anderson, Nimocks & Broadfoot for defendant, appellee, Mrs. Thelma Grantham.*

PARKER, J. Plaintiff offered evidence as follows: After supper on 30 November 1956 the defendant Mrs. Grantham was driving a 1955 Dodge Station Wagon north on U. S. Highway 301. Riding as passengers were plaintiff and a Mrs. Knight. Between the towns of Lumberton and St. Pauls the highway crosses Big Marsh Swamp. In this area there is a bridge on the highway 78 feet long. This bridge has solid sides 78 feet long, about 5 feet high, and 15 to 18 inches thick. It is about 20 feet wide. The highway leading up to it varies in width from 20 to 22½ feet. About 500 feet south of the south end of the bridge is a diamond-shaped sign with a yellow background and black letters bearing the words "Narrow Bridge." The bridge abutments are striped black and yellow from top to bottom. At the bridge the embankment on which the highway is built is 6 or 7 feet above the swamp. There is an embankment on each side of the highway leading to the bridge from 2 to 6 or 7 feet.

The headlights on the automobile driven by Mrs. Grantham were burning. She was driving at a normal rate of speed on her side of the highway. A patrolman testified for plaintiff the speed limit in that area was 55 miles per hour. As the automobile driven by Mrs. Grantham traveling north reached the sign south of the bridge bearing the words "Narrow Bridge," an automobile traveling south on the highway was approaching the bridge, and zigzagging in the highway. At this point in the highway plaintiff saw this automobile zigzagging in the highway, and asked Mrs. Grantham to stop, telling her there was something wrong with the approaching automobile. Mrs. Grantham picked up a little speed, and drove on, saying "half the damn highway was hers." As the automobile driven by Mrs. Grantham entered the bridge, with the other automobile swaying in the bridge, the two automobiles collided. The two automobiles were destroyed, and plaintiff and Mrs. Grantham were injured.

After the collision a patrolman talked with Mrs. Grantham in a hospital in Lumberton. She told him she was running about the speed

limit, and saw the other automobile about 50 feet away. She said "something about seeing headlights swaying back and forth across the road."

Mrs. Maude Hinnant testified she heard Mrs. Grantham tell plaintiff "not to talk so much, she might cause her to be tried for murder or manslaughter."

Plaintiff assigns as error the exclusion as against Mrs. Grantham of the testimony of plaintiff that she "saw a car zigzagging across the road." The defendant Gardner moved to strike out the answer on the ground that it violated G.S. 8-51, a party to a transaction excluded, when the other party is dead. The motion was allowed, and the court instructed the jury not to consider this evidence. Plaintiff stated it was competent as to the defendant Grantham. The court refused to admit it as to the defendant Grantham, and plaintiff excepted. The defendant Grantham in her answer admitted as true allegations in plaintiff's complaint to the effect that Gardner's intestate permitted his automobile to wobble from one side of the highway to the other, and to continue in such movements from one side of the center line to the other as it approached the entrance of the bridge, and continued to so operate his automobile after entering the bridge, and continued to drive from one side of the highway to the other and drove into the sides of the bridge, and caused it to rebound and collide with the automobile driven by Mrs. Grantham. This evidence was clearly competent as to Mrs. Grantham. Testimony which is competent as to one party should not be excluded because it is not competent against another party to the suit. In such a case the evidence should be limited by proper instructions. *S. v. Brite,* 73 N.C. 26; *S. v. Collins,* 121 N.C. 667, 28 S.E. 520; *S. v. Cobb,* 164 N.C. 418, 79 S.E. 419; *S. v. Kirkland,* 175 N.C. 770, 94 S.E. 725; *S. v. Franklin,* 248 N.C. 695, 104 S.E. 2d 837; *Olsen v. J. J. Jacobs Motor Co.,* 99 Cal. App. 423, 278 P. 1051; *Illinois C. R. Co. v. Houchins,* 121 Ky. 526, 89 S.W. 530, 1 L.R.A. (N.S.) 375, 123 Am. St. Rep. 205; *Consolidated Ice Machine Co. v. Keifer,* 134 Ill 481, 25 N.E. 799, 10 L.R.A. 696, 23 Am. St. Rep. 688; Jones on Evidence, Civil Cases, 4th Ed., Vol. 1, p. 306; 20 Am. Jur., Evidence, p. 253.

For the reasons stated above the court erred in excluding plaintiff's testimony in respect to what she saw about the approaching automobile and as to what she said to Mrs. Grantham about it, and as to what Mrs. Grantham replied, as against Mrs. Grantham. Later on the court admitted some of this testimony.

The court properly excluded the testimony of Mrs. W. C. Griffin that plaintiff said in the hospital "if Thelma Sue Grantham had

stopped the car, I would not be here." The statement was merely an opinion of plaintiff. *Lucas v. White*, 248 N.C. 38, 102 S.E. 2d 387; *Henderson v. Henderson*, 239 N.C. 487, 80 S.E. 2d 383; *Austin v. Overton*, 222 N. C. 89, 21 S.E. 2d 887.

G.S. 20-140 required Mrs. Grantham at all times to drive the automobile with due caution and circumspection and at a speed or in a manner so as not to endanger or to be likely to endanger any person or property, and G.S. 20-141 made a similar requirement that she shall operate her automobile with due regard to the width, traffic and condition of the highway, and, when special hazards exists by reason of highway conditions, speed shall be decreased as may be necessary to avoid collision with any person or vehicle on or entering the highway. *Singletary v. Nixon*, 239 N.C. 634,80 S.E. 2d 676; *Kellogg v. Thomas*, 244 N.C. 722, 94 S.E. 2d 903. By virtue of the express provisions of G.S. 20-141 the speed of an automobile may be unlawful "under the circumstances of a particular case, even though such speed is less than the definite statutory limit prescribed for the vehicle in the place where it is being driven." *Sowers v. Marley*, 235 N.C. 607, 70 S.E. 2d 670. These statutes prescribe a standard of care, "and the standard fixed by the Legislature is absolute." *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331.

This Court said in *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 330: "It is the duty of the driver of a motor vehicle not merely to *look*, but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

Regardless of statutes regulating the operation of automobiles, it was the duty of Mrs. Grantham in the operation of the automobile to exercise the care which a person of ordinary prudence would exercise under similar conditions to prevent injury to persons on the highway; that is, it was her duty in keeping a proper lookout to see and take notice of a sign advising her that a "Narrow Bridge" was ahead, to see and take notice of an automobile meeting her zigzagging on the highway, and to drive at such a speed as to have the automobile under proper control, so as in the exercise of due care to avoid, if it could be done in the exercise of due care, collision with the approaching automobile on the highway or on the bridge. *Kellogg v. Thomas, supra; Henderson v. Henderson, supra.*

"The driver of an automobile who is himself observing the law (G.S. 20-148) in meeting and passing an automobile proceeding in the opposite direction has the right ordinarily to assume that the driver of the approaching automobile will also observe the rule and avoid a collision." *Morgan v. Saunders*, 236 N.C. 162, 72 S.E. 2d 411.

"But this right is not absolute. It may be qualified by the particular circumstances existing at the time." *Brown v. Products Co., Inc.,* 222 N.C. 626, 24 S.E. 2d 334. Mrs. Grantham had no absolute right to act on this assumption for a reasonably prudent man might reasonably have anticipated, that, acting on the ground that half the highway was his, to increase speed and drive into the entrance of a narrow bridge 78 feet long with solid sides 5 feet high, with an automobile meeting him zigzagging in the road and entering and traveling upon the bridge, would lead to a collision between the two automobiles.

Mrs. Grantham contends that she was confronted with a sudden emergency. This Court said in *Ingle v. Cassady,* 208 N.C. 497, 181 S.E. 562: "One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made."

It is settled law in North Carolina that there can be more than one proximate cause of injury. *Moore v. Plymouth,* 249 N.C. 423, 106 S.E. 2d 695; *Price v. Gray,* 246 N.C. 162, 97 S.E. 2d 844.

If the jury should find from the evidence that Mrs. Grantham was negligent, and such negligence continued to the actual collision of the two automobiles in which plaintiff was injured, it would constitute a proximate cause of plaintiff's injuries. *Graham v. R. R.,* 240 N.C. 338, 82 S.E. 2d 346. "No negligence is 'insulated' so long as it plays a substantial and proximate part in the injury." *Henderson v. Powell,* 221 N.C. 239, 19 S.E. 876.

The true and ultimate test of Mrs. Grantham's operation of the automobile is this: What would a reasonably prudent person have done in the light of all the surrounding facts and circumstances?

Considering the evidence in the light most favorable to plaintiff, and giving her the benefit of all legitimate inferences to be drawn therefrom, and in view of the applicable principles of law stated above, it is our opinion that the case against Mrs. Grantham should have been submitted to the jury.

The judgment of involuntary nonsuit is

Reversed.

BOBBITT, J., dissenting. I agree fully with the well settled and well stated principles of law set forth in the Court's opinion. I differ as to their application to the facts in evidence.

There was plenary evidence that the negligence of Beryl J. Ford proximately caused the collision and plaintiff's injuries. Plaintiff having taken a voluntary nonsuit as to Ford's Administrator, Mrs.

Grantham is now sole defendant. Her alleged negligence is based on the fact that she failed to stop or slow down before reaching the bridge and thereby exposed the station wagon she was driving to the danger of collision.

When it was first observed that Ford's car was zigzagging, indicating something was wrong with the car or the driver, the station wagon was some five hundred feet south of the bridge. The evidence is not explicit as to where Ford's car was at that time. It was north of the bridge.

It is well to keep in mind that the highway was on a fill crossing Big Marsh Swamp.

Conceding the evidence was sufficient to cause defendant to apprehend that Ford's car was out of control, and that defendant was required to exercise due care to avoid a collision, what should she have done? In answering this question, we must bear in mind that the danger (sudden emergency) confronting defendant was caused solely by Ford's negligence.

It may be conceded that if defendant had stopped or slowed down she could have avoided a collision *on the bridge*. Whether she could have avoided *a collision* is another matter. If we attempt to answer this question, we find ourselves resorting to theory and conjecture.

Plaintiff contends there would have been no collision if defendant had stopped or slowed down pending Ford's further operations. True, it is possible that Ford might have gone off the fill before reaching the bridge, or wrecked on the bridge irrespective of collision, or gone off the fill south of the bridge before reaching the station wagon. On the other hand, if defendant stopped, passively awaiting the unfolding of events over which she had no control, she would thereby lose all ability to maneuver and expose herself and her companions to the likelihood of being knocked from the road down into the swamp.

Plaintiff contends that defendant, observing that Ford had entered the bridge and that his car was swaying as it proceeded southward, should have stopped before entering upon the bridge. On the other hand, if it appeared that a collision was probable, it would seem consistent with due care to strive to reach the bridge and thus have the protection of the 15-18 inch solid sides when the collision occurred; for if the collision occurred just south of the bridge the danger of being knocked from the road down into the swamp was imminent.

Whether the consequences would have been more or less serious if defendant had stopped in accordance with plaintiff's suggestion will never be known. In view of the circumstances then existing, I reach these conclusions: (1) The evidence is insufficient to support a

finding that a collision between the vehicles would not have occurred if defendant had slowed down or stopped. (2) Defendant's action in proceeding, always on her side of the highway, reasonably appeared to involve less risk, certainly no more, than would be involved by slowing down or stopping before reaching the bridge. In the sudden emergency created by Ford's negligence, I do not think it can be said that defendant's choice of conduct did not accord with what an ordinarily prudent person would or might have done under the same or similar circumstances. Hence, I vote to sustain the judgment of involuntary nonsuit.

I am authorized to say that Higgins, J., concurs in this opinion.